## Philip N. Rosenberg *vs.* Cindy M. Merida.

Essex. April 10, 1998. - August 12, 1998.

Present: Wilkins, C.J., Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Divorce and Separation,* Child support, Child custody, Findings. *Parent and Child,* Child support, Custody.

This court concluded that, where a noncustodial parent receives Social Security disability income (SSDI) dependency benefits, that amount is attributable as income to that parent for computation of child support under the Massachusetts child support guidelines, and that parent is then entitled to a dollar-for-dollar credit equal to the amount of the SSDI dependency benefits against the support obligation; however, a parent, in order to apply the credit, must file a complaint for modification of the child support obligation or otherwise seek approval of a judge pursuant to the provisions of G. L. c. 208, § 28. [184-189]

In a proceeding in the Probate and Family Court for modification of a child support order, where the judge made no findings relating to the amount of the support obligation [189] or relating to his award of sole legal custody of the minor child to the mother [190-191], the matter was remanded for further proceedings.

A judge of the Probate and Family Court did not exceed his authority under G. L. c. 208, § 36, in attaching the assets of the father in the amount of $60,000, to secure his child support obligation and for potential contribution to the minor child's college education expenses. [189-190]

Complaint for divorce filed in the Essex Division of the Probate and Family Court Department on December 28, 1987.

Complaints for modification, filed on November 8, 1994, and November 7, 1995, respectively, were heard by *Edward J. Rockett,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul C. Brennan* for the plaintiff.

*Mary P. Harrington* for the defendant.

Ireland, J. This appeal from a modification judgment (judgment) of the Probate and Family Court is a case of first impression in the Commonwealth and raises the issue whether a non-

custodial spouse who is receiving disability income benefits from the Social Security Administration should receive a credit against his child support obligation for the benefits paid by the Social Security Administration to his minor children as a result of his disability. We conclude that the noncustodial spouse should receive such a credit. However, because there are insufficient findings relating to the amount of the noncustodial spouse's support obligation, we vacate the judgment and remand the case for further proceedings consistent with this opinion. This appeal also raises two other issues, which we discuss in due course.

The judge would have been warranted in finding the following facts.[1] The plaintiff and the defendant were married on August 31, 1975. A daughter was born of the marriage in 1977, and a son was born of the marriage in 1984. The parties separated in 1986, and a judgment of divorce nisi was entered in the Probate and Family Court on August 17, 1990. The plaintiff and the defendant have each remarried. At the time the judgment issued, the plaintiff was living in Texas, the daughter was a full-time student at Hamilton College in Clinton, New York, and the son was enrolled at a public school in the town in which the defendant lived.

The parties also entered into an agreement of separation, support, and division of property (agreement) on the same date as the judgment of divorce. The agreement was incorporated into, but not merged with, the judgment of divorce, except for all matters pertaining to the care, custody, visitation, support, and education of the children, which were merged into the judgment of divorce under express provisions of the agreement. Under the agreement, the parties retained shared legal custody of their minor children. Physical custody was awarded to the defendant. The plaintiff was granted visitation rights on a supervised basis. The plaintiff was required to pay child support in the amount of $73.22 per week, to provide health insurance for the children, and to pay one-half of their uninsured medical and dental expenses. The defendant began providing health insurance for the children in 1991, and, pursuant to the terms of the agreement, the plaintiff's support obligation correspondingly increased to $113.55 per week. That amount was still in effect at the time the judgment issued.

---

[1] The only finding that the judge made was that "the parties are unable to communicate with one another."

When the parties were divorced in 1990, the plaintiff was unemployed, and his income consisted solely of interest and dividends from a family trust (trust). In December, 1992, the Social Security Administration determined that the plaintiff was disabled, and he began to receive Social Security Disability Income (SSDI) benefits. At the same time, the defendant, as representative payee for the minor children, also began to receive SSDI benefits (SSDI dependency benefits) because of the plaintiff's disability. At the time the judgment issued, the plaintiff was receiving SSDI benefits of $266 per week, and the defendant was receiving SSDI dependency benefits of $138.83 per week.

On November 8, 1994, the plaintiff filed a complaint for modification, seeking a reduction in his child support obligation. On November, 7, 1995, the defendant filed a complaint for modification, seeking an increase in child support and sole legal custody of the parties' minor son. On December 27, 1995, the trust was dissolved in an unrelated legal action, and the entire principal amount of about $179,000 was distributed to the plaintiff. On January 3, 1996, the defendant filed an ex parte motion to attach the assets that had been distributed from the trust. The motion was allowed, and on January 10, 1996, the parties stipulated to a reduction in the amount of the attachment to $75,000. All matters were consolidated for trial, and a modification hearing was held on July 17, 1996.

The judgment, which issued on August 21, 1996, increased the plaintiff's child support obligation to $130 per week, but relieved him of any responsibility for the children's uninsured medical and dental expenses.[2] The judgment also reduced the amount of the plaintiff's assets that were subject to attachment to $60,000 and awarded sole legal custody of the parties' son to the defendant. The plaintiff's motions for a stay of judgment and for relief from the judgment were denied. His appeal followed, and we transferred the case on our own motion.

1. *Determination of child support amount.* General Laws

---

[2]The defendant contends in her brief that the plaintiff's share of the uninsured medical and dental expenses averages about $17.30 per week, which is essentially equal to the amount of the increase in the plaintiff's child support obligation. As such, the defendant contends that the judgment does not substantially change the plaintiff's total obligation, but simply shifts the manner of payment to eliminate any need for the parties to communicate with respect to sharing the uninsured expenses.

c. 208, § 28, provides that orders for support of minor children shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from application of the Massachusetts child support guidelines (guidelines).[3] Under Guideline III, the judge has discretion to increase or decrease the support amount by as much two per cent as determined from applying the guidelines. There is otherwise "a rebuttable presumption that the amount . . . which would result from the application of the guidelines is the appropriate amount of child support to be ordered." G. L. c. 208, § 28. The judge may determine that one party has overcome the presumption, but only on making specific written findings "that the guidelines amount would be unjust or inappropriate under the circumstances" and that departure from the guidelines "is consistent with the best interests of the child." *Id.*

The issue before us with respect to the determination of the amount of the child support obligation is whether the judge properly accounted for the SSDI dependency benefits. In particular, we need to decide whether the plaintiff should receive a credit against his support obligation for the SSDI dependency benefits, and, if so, how the credit should be calculated and applied. The plaintiff argues that the proper approach for dealing with SSDI dependency benefits is to treat them first as if they were part of the gross income of the noncustodial parent for purposes of applying the guidelines and then to give that parent a dollar-for-dollar credit (equal to the amount of the SSDI dependency benefits) against the support obligation as determined by the guidelines. We agree. However, because the judge made no findings concerning the amount of the support obligation, we cannot determine if he followed this approach. Accordingly, we vacate the judgment insofar as it relates to the amount of the support obligation and remand for further proceedings consistent with this opinion.

Both parties agree that there is no reported case law in the Commonwealth that is directly on point. However, "[t]he overwhelming majority of states that have considered this issue allow a credit for Social Security benefits paid to dependent

---

[3]The Massachusetts child support guidelines (guidelines) were promulgated by the Chief Administrative Justice of the Trial Court pursuant to G. L. c. 211B, § 15. See *Canning* v. *Juskalian*, 33 Mass. App. Ct. 202, 204 n.2 (1992), citing *Department of Revenue* v. *Roe*, 29 Mass. App. Ct. 967, 968 (1990). The current version of the guidelines became effective January 1, 1998.

children." *Pontbriand* v. *Pontbriand*, 622 A.2d 482, 484 (R.I. 1993). More than thirty States have allowed a credit to the non-custodial parent for SSDI dependency benefits or for Social Security retirement benefits paid to the minor children of the noncustodial parent. See Annot., 34 A.L.R.5th 447, 469-487, 498-503 (1996). By contrast, New York appears to be the only State that refuses to allow such a credit as a per se rule. See *Graby* v. *Graby*, 87 N.Y.2d 605, 613 (1996). In other cases where a credit has been disallowed, courts have generally done so not as a matter of law, but for other reasons based on the facts and circumstances of the particular case. See *Wilson* v. *Stenwall*, 868 P.2d 1317, 1319 (Okla. Ct. App. 1992), and cases cited.

We now adopt the majority position of allowing a credit to the noncustodial parent for SSDI dependency benefits. One rationale for this position, which we find persuasive, is that:

> "unlike welfare and other forms of public assistance, social security benefits represent contributions that a worker has made throughout the course of employment; . . . Although the benefits are payable directly to the child rather than through the contributing parent, the child's entitlement to payments derives from the parent, and the payments themselves represent earnings from the parent's past contributions."

*Miller* v. *Miller*, 890 P.2d 574, 576-577 (Alaska 1995).[4] At the same time, allowing a credit to the noncustodial parent is not detrimental to the interests of the dependent child or children. Under the guidelines, the custodial spouse is to receive a certain amount of support, consistent with the various general principles stated in the preamble to the guidelines. The judge may then adjust this amount upon making specific written findings that it is "unjust or inappropriate." G. L. c. 208, § 28. Once the proper support amount is determined, the actual source of the payments should be of no concern to the custodial parent, so long

---

[4]At issue in *Miller* v. *Miller*, 890 P.2d 574, 576 (Alaska 1995), were Social Security retirement benefits, rather than Social Security disability income (SSDI) benefits, as in the instant case. However, the court there concluded, that, in this regard, there was "no reason to treat retirement benefits any differently than disability benefits." *Id.* at 577. We agree.

as the payments are actually made.[5] See *Miller, supra* at 577, quoting *Davis* v. *Davis*, 141 Vt. 398, 401 (1982); *Children & Youth Servs.* v. *Chorgo*, 341 Pa. Super. Ct. 512, 518 (1985).

The more difficult question is how to calculate and apply the credit. There is little consistency among the States that allow a credit, see Annot., 34 A.L.R.5th 447, 469-487, 498-503 (1996), nor do the guidelines provide a definitive answer. However, Guideline I-A defines income broadly as "gross income from whatever source" and explicitly lists social security benefits and disability benefits in the items that are to be included in income. It thus seems clear that the guidelines contemplate that the SSDI dependency benefits should be included in the income of one parent or the other.[6]

The fairest approach for calculating the credit here is to treat the SSDI dependency benefits as if they were first paid directly to the noncustodial parent, who then pays that same amount to the custodial parent to satisfy some part of the support obligation. Specifically, the amount of the SSDI dependency benefits should be included in the income of the noncustodial parent and the guidelines should then be applied to that amount. As in any other determination of a proper support obligation, the judge

---

[5]Allowing a credit is also consistent with our case law. In the factually similar case of *Cohen* v. *Murphy*, 368 Mass. 144, 146 (1975), the noncustodial parent had become disabled subsequent to the original support order, and the SSDI dependency benefits paid to his children exceeded his support obligation under that order. He unilaterally stopped his ongoing support payments, and the Probate Court issued a contempt decree against him. *Id.* at 145-146. We reversed and held that he was allowed a credit for the amount of the SSDI dependency benefits. *Id.* at 145. However, *Cohen* is not dispositive here. Our decision in *Cohen* was based largely on the fact that it was not clear from the original support order whether the noncustodial parent was entitled to the credit. *Id.* at 147. We then concluded that, because the noncustodial parent was an alleged contemnor, any ambiguities should be resolved in his favor. *Id.* There is no issue of contempt in the instant case. We note also that *Cohen* predates the guidelines. Nonetheless, the rationale of *Cohen* is illustrative of, and consistent with, our conclusion in the instant case, in that we noted in *Cohen* that the SSDI dependency benefits "were earned in part by the [noncustodial spouse] himself and not altogether a gift from the Federal Government." *Id.* at 148, quoting *Cash* v. *Cash*, 234 Ark. 603, 607 (1962).

[6]The defendant contended at oral argument that the guidelines require us to include the SSDI dependency benefits in the income of the defendant here (or, presumably as a more general rule, in the income of the custodial parent), because the dependency benefits were income that came into the defendant's household. We see nothing in the guidelines that supports the defendant's contention.

may adjust the amount as calculated by this approach on making findings that such amount is unjust or inappropriate. See G. L. c. 208, § 28. The noncustodial parent is then allowed a credit equal to the amount of the SSDI dependency benefits. The net amount of the noncustodial parent's support obligation thus is simply the difference between the support amount calculated above (or as adjusted by the judge) minus the amount of the credit.[7]

This approach has precedent in at least two other jurisdictions. See *Miller, supra* at 578; *Nazworth* v. *Nazworth*, 931 P.2d 86, 89 (Okla. Ct. App. 1996), citing *Wilson* v. *Stenwall*, 868 P.2d 1317, 1319 (Okla. Ct. App. 1992). In most circumstances, this approach should most nearly maintain the same percentage breakdown of income between the noncustodial parent and the custodial parent that existed prior to the disability of the noncustodial parent.

The final consideration here is how to apply the credit. The noncustodial parent may apply the credit against a child support obligation only after seeking modification and receiving an appropriate modification judgment. This is a minority position among those States that allow a credit for the SSDI dependency benefits to the noncustodial parent. See *Weaks* v. *Weaks*, 821 S.W.2d 503, 506 (Mo. 1991) (en banc). However, we believe that G. L. c. 208, § 28, does not permit any other method for the noncustodial parent to alter the amount of the support payments.

Any concerns over requiring a modification may be overblown. As the court stated in *Weaks, supra*, "[i]n situations involving disability benefits, the party seeking credit most likely faces a reduction of income, financial uncertainty, physical or mental impairment and other attendant consequences of disability." Contrary to the conclusion that the court then drew in *Weaks, supra*, that requiring the noncustodial parent to seek a modification would be "harsh and unjust," we believe instead that these are precisely the situations in which it would be likely that the noncustodial parent would be seeking a modifica-

---

[7]There would be an exception if the amount of the support obligation as calculated by this approach (or as adjusted by the judge) is less than the amount of the SSDI dependency benefits. In such case, the total support obligation is simply equal to the amount of the SSDI dependency benefits, and the noncustodial parent would not owe any additional amount.

tion in any event, because that parent will have undergone a substantial change in his or her circumstances.[8]

Because there are no findings concerning the support amount, we cannot determine if the judge followed the approach that we have prescribed here.[9] We therefore vacate the judgment insofar as it relates to the support amount and remand for further proceedings consistent with this opinion.

2. *Attachment of plaintiff's assets.* The judgment attached $60,000 of funds the plaintiff is currently holding in a bank account. General Laws c. 208, § 36, provides that, "[w]hen alimony or support is adjudged for the spouse or children, the Court may require sufficient security for its payment *according to the judgment*" (emphasis added). The plaintiff argues that the primary purpose of the attachment was to secure the college expenses of his son[10] and that, because these expenses are a future contingency, they have not yet been subject to a judgment, as required by G. L. c. 208, § 36. The plaintiff concludes

---

[8]In a tentative draft, dated April 8, 1998, the American Law Institute proposed treating SSDI dependency benefits as "independent sources of income" of the child. Principles of the Law of Family Dissolution: Analysis and Recommendations, § 3.10 comment d (Tent. Draft No. 3, 1998). Under the tentative draft, such income would "not ordinarily diminish a parent's child support obligation." *Id.* However, the tentative draft would allow a credit if "the child support obligor . . . would otherwise suffer hardship," unless allowing the credit would impose even greater hardship on the child. *Id.* The amount of the credit, if any, would be subject to the judge's discretion. *Id.*

In the illustration accompanying the tentative draft, the obligor parent is receiving worker's compensation benefits, as well as SSDI benefits. The illustration thus appears to anticipate situations in which the obligor parent had employment income prior to becoming disabled. That is not the situation here.

We note also that the approach we have prescribed here for calculating and applying the credit for SSDI dependency benefits would change if the guidelines were changed.

[9]In *Buckley* v. *Buckley*, 42 Mass. App. Ct. 716, 723 (1997), the Appeals Court held that a judge in the Probate and Family Court had made an implicit finding that application of the guidelines had yielded an unjust or inappropriate result, even without an explicit statement to that effect. However, in that case, the Appeals Court concluded that the judge's thought process was implicit in his other findings. Here, there are no findings concerning the amount of the support obligation from which we could begin to identify such an implicit finding.

[10]The daughter's college expenses are being paid by a separate trust fund (of which the son is not a beneficiary) and thus are not at issue in this appeal.

that the judge correspondingly exceeded his authority under G. L. c. 208, § 36. We disagree.

A Probate and Family Court judge has "broad discretion to fashion judgments in divorce proceedings that will best protect the interests and welfare of the parties' minor children." *Pare* v. *Pare*, 409 Mass. 292, 298-299 (1991). The exact form of the order (or the decision to enter an order at all) is also within the judge's broad discretion. *Id.* at 300. The judgment states explicitly that the plaintiff's assets are being attached "to secure [his] child support obligation and for potential contribution to [his minor child's] college education expenses."[11] The judgment does not indicate how much of the attachment is intended to secure the child support obligations and how much is intended to secure the potential college expenses, but this is of no import. The plaintiff does not contest that any amounts set aside to secure his child support obligations would have been subject to a judgment (and thus would fall within the judge's authority under G. L. c. 208, § 36). At the same time, art. VIII of the agreement requires each party to bear some financial responsibility for the college expenses. This article was incorporated in the judgment of divorce and nothing in the record indicates that it has been modified. The plaintiff's obligation for his son's college expenses has therefore been subject to a judgment, and his argument fails.[12] Accordingly, the judge did not exceed his authority under G. L. c. 208, § 36, in attaching the plaintiff's assets. We affirm the judgment insofar as it attaches $60,000 of the plaintiff's assets.[13]

3. *Legal custody of minor child.* The judgment stripped the

---

[11]At the modification hearing, the defendant alleged that the plaintiff was then in arrears on his child support obligations. The alleged arrearage appears to have amounted to less than $500 and was not addressed in the judgment.

[12]A logical extension of the plaintiff's argument would be that the judge also exceeded his authority under G. L. c. 208, § 36, by attaching assets to secure the plaintiff's child support obligations, because, under the terms of the agreement, such payments can terminate on the occurrence of a number of events (for example, the death of the child). Similar to the potential college expenses, each of the weekly child support payments would thus be a future contingency and would not explicitly have been subject to a judgment. Such an argument (which the plaintiff did not make) would clearly be contrary to the plain language and intent of G. L. c. 208, § 36, and to our cases.

[13]The plaintiff does not argue here that the amount of the attachment was incorrect or inequitable, but rather that the judge did not have authority to attach any assets at all. We believe that the amount of the attachment was not beyond the judge's discretion, given the amount of the plaintiff's support

plaintiff of shared legal custody with the defendant of their minor child and awarded sole legal custody to the defendant. General Laws c. 208, § 28, provides that a Probate and Family Court judge may modify an earlier divorce judgment concerning the custody of a minor child on finding "that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the child[]." The determination of which parent will promote a child's best interests rests within the discretion of the judge. See *Kendall* v. *Kendall*, 426 Mass. 238, 251 (1997), cert. denied, 118 S. Ct. 2369 (1998), citing *Vilakazi* v. *Maxie*, 371 Mass. 406, 409 (1976). A judge's findings in a custody case "must stand unless they are plainly wrong." *Prindle* v. *Fisk*, 2 Mass. App. Ct. 843 (1974), citing *Guardianship of a Minor*, 1 Mass. App. Ct. 392, 398 (1973). See *King* v. *King*, 373 Mass. 37, 40 (1977). However, we shall not sustain an award of custody "unless all relevant factors in determining the best interests of the child have been weighed." *Bouchard* v. *Bouchard*, 12 Mass. App. Ct. 899 (1981), citing *Haas* v. *Puchalski*, 9 Mass. App. Ct. 555, 556 n.5 (1980). See *King, supra,* and cases cited.

The only finding contained in the modification judgment is that "the parties are unable to communicate with one another." Although we express no opinion in this regard, that finding, if supported by the record, might be minimally sufficient to warrant a conclusion that a material and substantial change in the circumstances of the parties had occurred. See *Rolde* v. *Rolde*, 12 Mass. App. Ct. 398, 404 (1981) (concluding that shared legal custody requires both parents to agree on basic issues in child rearing and to want to cooperate in making decisions for their children). However, the judge "failed to make specific or detailed findings based on evidence within the record" that awarding sole legal custody of the minor child to the defendant was in the best interests of the child. *Ardizoni* v. *Raymond*, 40 Mass. App. Ct. 734, 741 (1996). We thus cannot determine what factors the judge considered in making the custody award, and we accordingly cannot sustain the award. *Id. Bouchard, supra.* We vacate the judgment insofar as it awards sole legal

---

obligation, the age of the minor child, and the potential amount of college expenses. We note, in addition, that the plaintiff is allowed to keep the income from the attached assets, and that he has indicated that he does not intend to use the other principal from the trust·for his own support.

custody to the defendant, and remand for further proceedings consistent with this opinion.

*So ordered.*