## Eileen Fleming *vs.* Paul M. Fleming.

No. 03-P-393.

Plymouth. April 1, 2004. - September 22, 2004.

Present: Lenk, Cowin, & Doerfer, JJ.

*Divorce and Separation,* Division of property, Child support. *Probate Court,* Judicial discretion.

In a divorce action, the judge did not err in calculating the total value of the marital estate, where there was no evidence that certain sums allegedly appropriated by the wife (and thus excluded from the judge's calculations) were used exclusively for her personal benefit. [105-106]

This court remanded to the Probate and Family Court for further proceedings a matter involving child support, where it was unclear how the judge arrived at a basic child support order of $50 per week, and where the judge's fashioning of an order permitting the wife to retain a portion of the husband's share of the marital assets in lieu of thirteen years of child support did not constitute a reasonable exercise of discretion and was inequitable. [106-109]

Complaint for divorce filed in the Plymouth Division of the Probate and Family Court Department on April 13, 2001.

The case was heard by *Anna H. Doherty,* J.

*Joseph S. Tangusso* for Paul M. Fleming.

*Ellen Mattingly* for Eileen Fleming.

Doerfer, J. Paul Fleming, the former husband (husband) of Eileen Fleming (wife), appeals from a judgment of divorce nisi, as corrected, of the Probate and Family Court which, among other things, divides the parties' property and allows the wife to retain a portion of the husband's share of the marital assets "in lieu of thirteen years of child support at $50.00 per week." We vacate so much of the corrected judgment as relates to child support and remand the matter to the Probate Court for further proceedings.

1. *Background.* The parties were married in May, 1991, and separated in March, 2001. Two children were born of the union.

At the time of trial, the parties' primary assets were a general store and the former marital home. The parties opened the general store in April, 1994. Although the husband was instrumental in the "set-up" of the store, and worked there from time to time (as well as at a second store operated briefly by the parties), the wife managed the store throughout the marriage and was primarily responsible for its operation.[1] At the time of trial, the store provided the wife and children with a gross weekly income of $690, their sole source of support.[2] The store had a fair market value of about $145,000.

The parties purchased the former marital home prior to the marriage, the wife contributing $8,500 to $10,000[3] and the husband $35,000 toward the purchase of the property. At the time of trial, the house had a fair market value of $240,000 and a mortgage of $182,000 for an equity value of $58,000. Each party also owned a motor vehicle (the wife, a 1999 Ford Expedition with an equity value of $12,100, and the husband, a 1994 minivan worth $1,900) and other assets of nominal value.

On the evidence presented, the judge found that the parties' total estate was worth $216,900, and concluded that an "equitable division of the estate is ¹/₃ to Husband and ²/₃ to Wife." After adjusting the husband's one-third share of the estate ($72,300) by $2,800 to take into account assets presently in the husband's possession, the judge found that the husband was entitled to assets worth $69,500. Continuing, the judge stated in her "rationale":

> "Wife needs the store to provide for the children. Husband testified he could not earn enough money to pay child support for the children of the ages of eight and five. The children will need support from both parents. The basic

[1]In addition to working at the store sixty to seventy hours per week, the wife undertook substantial home and child care responsibilities.

[2]After the parties' separation, the husband obtained employment as a delivery person for an auto parts company. The husband listed his income at $320 per week on his financial statement, and the judge found that because of the husband's age (sixty-one years) and "circumstances" (e.g., limited education and skills) he cannot earn more than $350 to $400 per week.

[3]On page two of her findings, the Probate Court judge states that the wife contributed $8,500 to the purchase of the marital home, while on page three of the findings, the judge states that the wife contributed $10,000.

child support order is $50.00 per week, and the youngest child will need support until the age of eighteen. Therefore, I am having Mother retain a portion of Father's assets to pay that support. The children and Wife need medical insurance, and Husband has that available through his employment."

The judge ordered, in paragraph eight of the corrected judgment, that "[u]pon the payment [on or before December 18, 2002,] of $35,000.00 to the Husband by the Wife, [the Wife] shall be the sole owner of the home and business. The remaining $34,500.00, which represents Husband's one third share of the marital assets,[4] shall be retained by the Wife in lieu of thirteen years of child support at $50.00 per week."[5] The judge also ordered the husband to provide medical insurance for the children.

2. *The valuation of the marital estate.* At oral argument, the husband conceded that the judge's allocation of the marital assets was fair and equitable, but argued (as he also did in his brief) that the judge erred in calculating the total value of the marital estate. Specifically, the husband asserts that the "true value" of the marital assets was $253,164,[6] "when you add the $4,400.00 appropriated by the Wife from the [parties'] joint [checking] account[7] . . . and $31,864.00 she withdrew from the equity in the house for her personal benefit."[8] The husband appears to assert that his one-third share of the marital assets

[4]As the judge found that the husband's one-third interest in the marital estate was $72,300, it appears that the judge intended to say "which represents [the rest of] [h]usband's one third share of the marital assets."

[5]As the parties' younger child was actually six years of age at the time the judgment was originally entered, the judgment provides the child with support beyond the age of eighteen.

[6]At oral argument, the husband attempted to augment this sum to include a modest tax refund.

[7]The judge found that at the time the parties separated, they held a joint checking account containing $4,400. The wife closed the checking account and opened a new account in her name only. There was evidence that the wife closed the account prior to the filing of the divorce complaint, i.e., when the automatic restraining order set forth in Rule 411 of the Supplemental Rules of the Probate Court (2000) would have prevented her from closing such accounts.

[8]It is undisputed that the parties were deeply in debt during the marriage and that the wife, with the husband's assent, sought the assistance of a credit

(before adjustments) should have been fixed by the judge at $84,388. We fail to discern error.

Contrary to the husband's assertion in his brief, there is no indication in the record before us that the refinancing proceeds of approximately $31,864 were used "exclusively for [the] wife's benefit." Indeed, the husband, through counsel, conceded at oral argument that he could not answer whether the credit card balances were accumulated jointly or individually by the wife, and he appeared to acknowledge subsequently that the automobile loan and credit card balances were joint marital debts. Similarly, the record is devoid of evidence that the $4,400 taken by the wife from the joint checking account was used exclusively for her personal benefit. We note, in addition, that although the wife purchased a sport utility vehicle subsequent to the parties' separation and her refinancing of the marital home, the wife's equity in the vehicle at the time of trial, which the judge considered in calculating the value of the marital estate, appears to have been derived from the trade-in value of another vehicle. In the circumstances, and on the argument presented, we cannot say that the judge (who was cognizant that the wife had violated the automatic restraining order established by Rule 411 of the Supplemental Rules of the Probate Court [2000] by refinancing the home) erred by failing to increase the value of the marital estate by $36,264.

3. *The retention of assets in lieu of child support.* The husband argues that the judge erred in (1) fixing his child support obliga-

counseling service. Much of the parties' debt was consolidated and the wife made one payment per month to the counseling service. On June 27, 2001, some two and one-half months after the wife filed her complaint for divorce, she refinanced the marital home and paid off (among other things) the amounts owed to the counseling service, a loan (in the amount of $24,205.77) on a 2000 Grand Marquis automobile purchased during the marriage, and the balances on three credit cards in her name in the total amount of $7,659.11. The wife testified that as a result of the refinancing, her mortgage increased but her monthly expenditures decreased. As for the Grand Marquis automobile, the wife testified that she had been making payments of $560 per month on the vehicle but needed a larger vehicle to assist her in the operation of the store. The wife stated that after she paid off the loan on the Grand Marquis, she tried to sell it but "nobody would take it." Eventually, the wife received approximately $15,000 for the Grand Marquis as a "trade in" when she bought the 1999 Ford Expedition. The wife also financed the purchase of the vehicle by taking out a loan in the approximate amount of $8,000.

tion at $50 per week when he was in "full compliance" with the Massachusetts Child Support Guidelines (guidelines), i.e., that he owed no child support to the wife under the guidelines,[9] and (2) fashioning an order which, essentially, requires him to prepay thirteen years of child support. The husband also asserts that any order that deprives him of his fair share of the marital estate is inequitable. We agree that the provisions of the corrected judgment relating to child support must be set aside.

At the outset, the wife, through counsel, suggested at oral argument that the judge's order concerning the transfer of funds to her in lieu of child support might be viewed as an additional allocation of assets under G. L. c. 208, § 34 (taking into account the present and future needs of the children), rather than as child support to be computed strictly under the guidelines. In our view, however, such a position is inconsistent with the judge's repeated references to "child support" in her rationale, her stated intention to award the husband one-third of the marital assets, and the reference in her conclusions of law to her authority to secure a spouse's duty to provide support for minor children.[10] That said, it is simply unclear how the judge arrived at the "basic child support order" of $50 per week. That amount, as the husband notes, does not appear to be consistent with the presumptive guidelines support order in this case, particularly when the husband's court-ordered payment of family group health insurance is taken into account.[11] The judge made no finding that the application of the guidelines would be

---

[9]We note that the guidelines formerly provided for a minimum order of fifty dollars per *month*. See Child Support Guidelines II-C (1998). The minimum order was increased in 2002 to eighty dollars per month. See Child Support Guidelines II-C (2002). At oral argument, the husband, through counsel, stated that the "correct amount" of support that should have been ordered by the court was eighty dollars per month, but that the husband had satisfied his support obligation under the guidelines by paying medical insurance for the children.

[10]In her brief, the wife herself voiced her understanding that the allocation of $34,500 of the husband's portion of the marital assets to her was "to secure the payment of child support."

[11]In February, 2002, the parties entered into a stipulation, which became a temporary order of the court, wherein the husband agreed to provide health insurance coverage for the wife and the children. Based on the husband's representation that the cost of health insurance would increase from $28 per week to $81 per week in order to cover the family unit, the wife agreed that there should not be a child support payment by the husband. At trial, the

unjust or inappropriate in this case. See Child Support Guidelines, preamble. In the circumstances, the matter must be remanded to the Probate Court for further proceedings on the question of child support.

Although it is possible that a recalculation of child support on remand will obviate the need to consider the possible inclusion of a "security" provision in the judgment, we comment on . the judge's order allowing the wife to retain approximately one-half of the husband's share of the marital assets in lieu of thirteen years of child support. It is settled that a Probate Court judge has "broad discretion to fashion judgments in divorce proceedings that will best protect the interests and welfare of the parties' minor children," see *Pare* v. *Pare*, 409 Mass. 292, 298-299 (1991); *Passemato* v. *Passemato*, 427 Mass. 52, 55 (1998); *Rosenberg* v. *Merida*, 428 Mass. 182, 190 (1998), and may enter appropriate orders designed to secure a spouse's duty for future support.[12] See G. L. c. 208, §§ 12-14 & 36 (regarding

husband offered evidence that his base salary, without overtime, was $320 per week (as we have stated, the judge found that the husband could not earn more than $350 to $400 per week), and that the cost to him of family health insurance was $77.84 per week. The husband used these figures, as well as a custodial parent gross income figure based on the wife's weekly income of $705 (somewhat above the amount found by the court), in the child support guidelines worksheet which he submitted to the court. Although the husband concluded that his weekly child support order was $0, we voice no opinion as to the *precise* amount, if anything, owed by the husband under the guidelines. We note only that at the time of trial the presumptive guidelines order would appear to have been less than $50 per week.

[12]In *Pare* v. *Pare*, 409 Mass. at 301, the Supreme Judicial Court directed the Probate Court judge to consider the wife's request that a portion of the husband's proceeds from the sale of the marital home be set aside as security for his future child support obligations. In *Passemato* v. *Passemato*, 427 Mass. at 54-57, the court affirmed a judge's order requiring the wife to fund a college educational trust for the future benefit of the parties' three minor children (with unexpended sums to revert to the wife) in circumstances where the wife had engaged in reckless economic and social behavior and it was unlikely, in the absence of a trust structure, that sufficient funds would remain for the children to obtain college educations. In *Rosenberg* v. *Merida*, 428 Mass. at 190, the court upheld a judgment insofar as it attached $60,000 of funds held by the husband in a bank account. Said attachment meant to secure the husband's "child support obligation and for potential contribution to" the child's college education expenses. *Id.* at 189-190. The court noted that the husband was allowed to keep the income from the attached assets. *Id.* at 190 n.13.

attachments and security for payment of support). See also *Pare* v. *Pare*, 409 Mass. at 298-301. Compare *Johnson* v. *Johnson*, 425 Mass. 693, 694-696 (1997) (judge may not assign marital property to third persons, even of the marriage). "Whether to enter such orders in a given case, as well as the specific form that any order or orders should take, are matters within the judge's broad discretion, to be exercised upon consideration of all relevant circumstances." *Pare* v. *Pare*, 409 Mass. at 300. See *Ross* v. *Ross*, 50 Mass. App. Ct. 77, 83 (2000).

In the circumstances presented here, we think the order fashioned by the Probate Court judge does not constitute a reasonable exercise of the judge's discretion and is inequitable. By providing the wife, in effect, with fifty dollars of weekly child support *as well as* the present benefit of thirteen years of that support (all without any constraint upon her as to the use of the monies, cf. *Lang* v. *Koon*, 61 Mass. App. Ct. 22, 26 n.9 [2004], or apparent contemplation of the possibility of future changes in the parties' or the children's circumstances), while effectively reducing the husband's one-third share of the marital assets[13] and depriving him of any interest income which a full assignment of assets might otherwise produce, the judge's order is distinguishable from, and in our view, traverses the boundaries of, acceptable orders for security (or requests for orders for security) discussed in cases such as *Pare, Passemato,* and *Rosenberg.* See note 11, *supra.*

4. *Summary.* Paragraph eight of the corrected judgment of divorce nisi must be vacated and the matter remanded to the Probate and Family Court for further proceedings. The question of child support is to be revisited and appropriate orders entered thereon. The probate judge may conduct such further hearings as necessary. Any new order should be supported by findings of fact. In all other respects, the judgment is affirmed.

*So ordered.*

---

[13]The order leaves the husband, who was already in financial straits, with only modest resources to draw upon.