IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 11, 2005 Session

## ELIZABETH S. F. MARTELLA v. DAVID R. MARTELLA

Appeal from the Circuit Court for Franklin County
No. CV-11644     Buddy D. Perry, Judge

No. M2003-03105-COA-R3-CV - Filed January 5, 2006

This appeal involves a parental dispute over the payment of child support for a fifteen-year-old child. One year following the divorce, the child's father filed a petition in the Circuit Court for Franklin County seeking to modify his $2,100 per month child support obligation because his visitation with his daughter had increased and because his daughter was receiving Social Security benefits as a result of his retirement.  Following a bench trial, the trial court determined that the father was willfully unemployed and declined to lower his child support obligation.  However, the court determined that the father was entitled to an offset in the amount of the Social Security benefits that the child was receiving as his dependent.  Both the mother and the father take issue with the judgment.  The father asserts that the trial court erred by refusing to lower his child support obligation.  The mother insists that the court erred by giving the father credit for the Social Security benefits the child was receiving.  We affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Robert B. Pyle, Chattanooga, Tennessee, for the appellant, Elizabeth S. F. Martella.

Timothy S. Priest, Winchester, Tennessee, for the appellee, David R. Martella.

### OPINION

### I.

Elizabeth S. F. Martella and David R. Martella were married and lived in Sewanee, Tennessee.  Their only child, Catherine J. Martella, was born in September 1987.  Mr. Martella worked in many countries as an agricultural economist.  In addition to his income from these projects, Mr. Martella received substantial passive income from two family trusts.  Ms. Martella had been employed by the United States Information Agency but had been forced to retire because of chronic depression. Catherine Martella grew to be a bright and precocious child and was attending St. Andrew's School in Sewanee when her parents separated.

After the marriage foundered, Mr. Martella moved to New Hampshire, and Ms. Martella and Catherine Martella continued to live in Sewanee. Mr. Martella did not visit with his daughter regularly but agreed to pay $1,580 per month in child support pending the divorce hearing. Following a hearing in March 2001, the Circuit Court for Franklin County entered an order on May 18, 2001 declaring the parties divorced and addressing other issues that attend the dissolution of a marriage.

The only portions of the May 18, 2001 order that are relevant to this appeal are the provisions for custody, visitation, and child support. The trial court approved the parties' parenting plan that designated Ms. Martella as the primary residential parent and provided for substantially more visitation by Mr. Martella than he had exercised prior to the divorce. Even though Mr. Martella had requested a reduction in the amount of child support he had been paying, the court ordered him to pay $2,100 per month in child support. The court based its decision on three factors: (1) Mr. Martella's ability to earn $420 per day, (2) Mr. Martella's infrequent visitation with his daughter, and (3) Mr. Martella's trust income. Neither party appealed the final divorce decree.

On July 10, 2002, Mr. Martella filed a petition to modify his child support obligation. Two weeks later, on July 22, 2002, he filed an amended petition asserting two grounds justifying his request for a modification. First, he insisted that he was spending much more visitation time with his daughter than had been the case when the parties divorced. Second, he stated that he was sixty-three years old and that he had elected to "retire" and begin drawing Social Security retirement benefits. He informed the court that he was now receiving Social Security benefits in the amount of $1,223 per month and that Catherine Martella was receiving $714 per month as his dependent. Based on his assertion that his monthly income was now only $10,219, Mr. Martella asked the court to reduce his child support obligation to $1,500 per month.[1]

Ms. Martella opposed Mr. Martella's request for a reduction in his child support obligation.[2] She argued that Mr. Martella had stated during the 2001 divorce proceedings that he did not intend to begin drawing Social Security until he was sixty-five years old and that Mr. Martella was willfully unemployed. She also insisted that Mr. Martella should not be entitled to benefit in any way from the $714 in Social Security benefits that Catherine Martella was receiving because these funds had simply replaced the $645 in Social Security disability benefits Catherine Martella had been receiving because of Ms. Martella's disability.

After an unsuccessful attempt at mediation, the trial court conducted a hearing on December 3, 2002. Mr. Martella confirmed that he was receiving Social Security retirement benefits and explained that he had elected to begin drawing Social Security benefits earlier than he had planned

---

[1]In his original petition, Mr. Martella had asserted that his monthly income was only $2,551 and that he should be excused from paying any child support because the Social Security benefits his daughter was receiving exceeded the support he was required to pay under the Child Support Guidelines.

[2]Ms. Martella also raised issues regarding the timeliness of Mr. Martella's September 2002 child support payment and Catherine Martella's desire to attend summer school at St. Andrew's School during the summer of 2003. These matters were resolved at trial and are not part of this appeal.

because the overseas employment opportunities available to him had changed following the catastrophe in New York on September 11, 2001. He stated that his former work assignments had been of relatively short duration and that the only offers he was now receiving required significantly longer stays in underdeveloped countries. He asserted that these work assignments would interfere with his ability to maintain visitation with his daughter and that they could impair his ability to control his diabetes and high blood pressure.

Ms. Martella testified regarding the new home she had purchased and the five trips, including four international trips, that she and her daughter had taken since the divorce. She explained how federal policy had resulted in the cessation of the $645 in Social Security disability payments that Catherine Martella had been receiving. As Ms. Martella understood it, federal policy would not permit her daughter to receive two Social Security benefits, and a dependent eligible for two types of benefits was entitled to receive only the higher of the two.[3] Because Catherine Martella was receiving $714 per month as Mr. Martella's dependent, the $645 per month she had been receiving as Ms. Martella's dependent had been discontinued. In light of this circumstance, Ms. Martella insisted that Mr. Martella was entitled, if anything, to only a $69 per month credit – the difference between the retirement benefits her daughter was now receiving and the disability benefits she had been receiving previously.

On March 5, 2003, the trial court filed a final order denying Mr. Martella's request to reduce his child support obligation. The court determined that, beginning in December 2002, Mr. Martella was entitled to offset his child support payments by $724[4] per month based on the dependent retirement benefits that Catherine Martella was receiving. The court also determined that there was no basis for Ms. Martella's "equitable argument" that this offset to Mr. Martella's child support should be reduced because of the cessation of Catherine Martella's disability dependent benefits. Ms. Martella perfected this appeal to take issue with the trial court's decision to give Mr. Martella full credit against his child support obligation for the Social Security retirement benefits Catherine Martella has been receiving. For his part, Mr. Martella asserts that the trial court erred by denying his petition to reduce his child support.

## II.
### THE DENIAL OF MR. MARTELLA'S PETITION TO REDUCE HIS CHILD SUPPORT OBLIGATION

Mr. Martella takes issue with the trial court's denial of his petition to reduce his child support obligation. He insists that the court erroneously employed the "substantial and material change of circumstances" test rather than the "significant variance" test to determine whether his child support should be reduced and that the record does not support the trial court's apparent conclusion that he is willfully underemployed. We have determined that the trial court properly declined to reduce the

---

[3] In fact, 20 C.F.R. § 404.353(b) (2005) states, in part, that "[i]f you are entitled to a child's benefit on more than one person's earnings record, you will ordinarily receive only the benefit payable on the record with the highest primary insurance amount."

[4] The trial court noted that Catherine Martella's dependent retirement benefits had increased from $714 to $724 per month.

amount of Mr. Martella's child support obligation because it was based on a "previously court-ordered deviation from the guidelines" and because all the circumstances warranting this deviation have not changed.

## A.

Prior to 1994, the courts used the same test to determine whether they should modify an award of child support that they used to determine whether they should modify an award of long-term spousal support. Following the statutory mandate, the courts declined to consider modifying alimony or child support awards without a showing that a "substantial and material change of circumstances" had occurred. Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1993). In 1994, the Tennessee General Assembly adopted a new test for determining whether a child support award should be modified.[5] The new test permitted modifications in child support awards only "when there is found to be a significant variance . . . between the guidelines and the amount of support currently ordered." Tenn. Code Ann. § 36-5-101(g)(1).

The General Assembly purposely did not define "significant variance" but rather left this definition to the drafters of the Child Support Guidelines. The Child Support Guidelines applicable to this case[6] define a "significant variance between the guideline amount and the current support order" as "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (2003).

However, the "significant variance" test does not limit the courts' focus to simply the changes in the obligor parent's income or the amount of child support. Both Tenn. Code Ann. § 36-5-101(g)(1) and the Child Support Guidelines permit the courts to consider whether the child support award sought to be modified reflected an intentional judicial decision to deviate from the amount of support that the guidelines would have required. Thus, courts are not required to modify an existing child support award, even when a significant variance exists, if the variance results from "a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed." Tenn. Code Ann. § 36-5-101(g)(1). In similar fashion, the Child Support Guidelines state:

> Such variance would justify the modification of a child support order unless, in situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed.

---

[5] Act of Apr. 21, 1994, ch. 987, § 3, 1994 Tenn. Pub. Acts 1007, 1009-1010, originally codified at Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1994), now codified at Tenn. Code Ann. § 36-5-101(g)(1) (2005).

[6] The 2003 version of the Child Support Guidelines rather than the 2005 version of the Child Support Guidelines, applies to this case. The new Child Support Guidelines apply to "any judicial . . . action brought to establish, modify, or enforce child support . . . on or after the effective date of these rules." Tenn. Comp. R. & Regs. 1240-2-4-.01(2)(a) (2005). Mr. Martella "brought" his petition to modify his child support obligation on July 10, 2002, well before the January 18, 2005 effective date of the new Child Support Guidelines.

> Upon a petition for adjustment by either party, the court shall increase or decrease the award amount as appropriate in accordance with these guidelines unless the significant variance occurs due to a previous decision of the court to deviate from the guidelines and the circumstances which caused the deviation have not changed.

Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (2003).

## B.

The trial court's original decision to order Mr. Martella to pay $2,100 per month in child support was premised on the court's considered decision to deviate from the Child Support Guidelines. The May 18, 2001 order reflects that the court decided to deviate upward because Mr. Martella was not exercising much visitation with his daughter.[7] The order also reflects that the trial court calculated Mr. Martella's income for child support purposes based on its conclusion that he was willfully unemployed.[8]

These same concerns were on the trial court's mind during the December 3, 2002 hearing. The court again concluded that Mr. Martella continued to be voluntarily and willfully unemployed.[9] Thus, despite the fact that Mr. Martella was spending more time with his daughter, the trial court had the prerogative to decline to lower his child support obligation based on its conclusion that Mr. Martella continued to be voluntarily and willfully unemployed.

Mr. Martella insists, however, that the evidence does not support the trial court's finding that he is voluntarily and willfully unemployed. We disagree. Mr. Martella testified during the December 3, 2002 hearing that he continued to receive job offers but that these offers did not suit him because of the duration and location of the work. His professed concerns about the effect that the work had on him were as unpersuasive to the trial court in 2002 as they had been in 2001. Mr. Martella's concerns about the state of his health were undermined by the evidence that he travels frequently on extended visits between his home in New Hampshire and the residences of relatives in Oklahoma and California.

---

[7]Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(b) (2003) permits upward deviations when the obligor parent is not exercising his or her visitation rights.

[8]The May 18, 2001 order imputes an additional $25,000 in annual income to Mr. Martella based on the court's conclusion that "[i]t is not equitable for Mr. Martella to have a reduction in his child support obligation merely because he does not choose to work, even part-time."

[9]The trial court observed: "I'm going to find that there's not a change in circumstances. The jobs are available and I think he told it to me clearly, he's not interested. That's his option."

## III.
### THE CREDIT FOR THE SOCIAL SECURITY RETIREMENT BENEFITS

Ms. Martella insists that the trial court erred by permitting Mr. Martella to offset his child support payments by the full amount of the payments Catherine Martella was receiving from the Social Security Administration because of Mr. Martella's retirement. She insists that it is not in the parties' daughter's best interests to permit Mr. Martella to receive a $724 per month credit on his child support payments when the net benefit to his daughter was only $79. We have determined that the trial court's decision to permit Mr. Martella to offset his child support payments by the amount of the Social Security dependent benefits his daughter had been receiving is entirely consistent with the applicable law.

Neither the statutes governing child support nor the Child Support Guidelines address the question of whether an obligor parent is entitled to a credit against his or her child support obligation for Social Security benefits paid to a child as a result of the obligor parent's retirement.[10] In 1996 this court, following the lead of a majority of other jurisdictions that had addressed the question,[11] held that obligor parents were, in fact, entitled to receive a credit against the child support obligation for Social Security retirement benefits paid directly to the child on the parent's behalf. *Wilkerson v. Wilkerson*, No. 03A01-9604-CH-00149, 1996 WL 722051, at *3 (Tenn. Ct. App. Dec. 17, 1996) (No Tenn. R. App. P. 11 application filed).

Ms. Martella does not take direct issue with the holding or reasoning of the *Wilkerson v. Wilkerson* decision. However, she insists that Mr. Martella should not receive the credit under the facts in this case because the amount of the credit he would receive exceeds the net benefit to the parties' daughter.[12] While Ms. Martella's argument strikes a responsive chord, it cannot carry the day based on the law applicable to this case. As the law existed at the time of the hearing, an obligor parent's child support obligation was a function of the parent's income, the number of children to be supported, and several well defined grounds for deviation. *See Chorost v. Chorost*, M2000-00251-COA-R3-CV, 2003 WL 21392065, at * 6 (Tenn. Ct. App. June 17, 2003) (No Tenn. R. App. P. 11 application filed); Tenn. Comp. R. & Regs. 1240-2-4-.03(5) (2003). The courts are not

---

[10] Prior to 1997, Tenn. Code Ann. § 36-5-101(a)(4)(E)(ii) (1996) provided that "[n]o credit for child support payments shall be given by the court for payments by the social security administration to the obligor's child pursuant to a claim based on the work-related disability of the obligor." The Tennessee General Assembly repealed this provision in 1997. Act of May 30, 1997, ch. 551, § 52, 1997 Tenn. Pub. Acts. 1012, 1084.

[11] *See, e.g.*, *Lopez v. Lopez*, 609 P.2d 579, 581 (Ariz. Ct. App. 1980); *Sealander v. Sealander*, 789 So. 2d 401, 403 (Fla. Dist. Ct. App. 2001); *Child Support Enforcement Agency v. Doe*, 990 P.2d 1158, 1163-67 (Haw. Ct. App. 1999); *In re Marriage of Henry*, 622 N.E.2d 803, 808-09 (Ill. 1993); *In re Marriage of Belger*, 654 N.W.2d 902, 906-09 (Iowa 2002); *In re Marriage of Martin*, 95 P.3d 130, 134 (Kan. Ct. App. 2004); *Rosenberg v. Merida*, 697 N.E.2d 987, 990 (Mass. 1998); *In re Angley-Cook*, 855 A.2d 431, 435 (N.H. 2004); *Pontbriand v. Pontbriand*, 622 A.2d 482, 484-85 (R.I. 1993); *see also* Michael A. DiSabatino, Annotation, *Right to Credit on Child Support Payments for Social Security of Other Government Dependency Payments Made for Benefit of Child*, 34 A.L.R.5th 447 (1995 & Supp. 2005).

[12] In fact, as a result of Mr. Martella's decision to begin drawing Social Security retirement benefits, the amount of money available to support the parties' child from Mr. Martella and Social Security decreased by $645.

permitted to take the other financial resources that might be available to the child into consideration. The effect on the resources available to Catherine Martella in this case is caused, not by Mr. Martella's decision to begin drawing Social Security, but rather by 20 C.F.R. § 404.353(b). Thus, under the guidelines in effect in 2003, the net reduction in resources available to Catherine Martella resulting from 20 C.F.R. § 404.353(b) and Mr. Martella's retirement would not, in and of itself, have justified an increase in Mr. Martella's child support obligation.

## IV.

We affirm the March 5, 2003 order and remand the case to the trial court for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal in equal proportions to David R. Martella and to Elizabeth S. F. Martella and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.