NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-394

A.W.

vs.

K.W.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The parties were married in 2011.  In 2019, citing an irretrievable breakdown of the marriage, the plaintiff filed for divorce.  After a trial, the judge awarded the plaintiff sole legal and physical custody of the parties' two children and ordered the defendant to pay the plaintiff twenty-five dollars weekly in child support.  No alimony was awarded.  The defendant maintains that the trial judge erred, both in granting sole custody to the plaintiff and in not addressing the division of the marital estate.  Because the judge failed to make the statutory findings required by G. L. c. 208, §§ 34, 53 (a), and the judgment is silent on the division of the marital estate, we

remand that portion of the judgment. We affirm the judgment of divorce in all other respects.

Background. The plaintiff filed for divorce and the defendant counterclaimed. At trial, four witnesses testified (both parents, a court clinician, and the defendant's romantic partner). The clinician, who was appointed by the judge, interviewed both parents, both children, the defendant's partner, the defendant's mother, and the defendant's therapist. She submitted a twenty-page report detailing her findings and conclusions about the parties' individual and family histories and the children's needs. The judge found the clinician's report and testimony credible and had "no hesitation in adopting and incorporating [her] [r]eport of events and her overall conclusions."

The plaintiff filed for divorce in September 2019 after an incident in July of that year that resulted in the defendant's being admitted to an inpatient psychiatric unit. The plaintiff sought and was issued a G. L. c. 209A abuse prevention order (209A order) in connection with this incident. In part because of the COVID-19 pandemic, and partly due to the provisions of the 209A order, the defendant did not see the children in person for almost two years after the separation.

2

While the children were in the plaintiff's sole custody, the clinician noted concerns with both school attendance (during the 2020-2021 school year, which was affected by the COVID-19 pandemic) and the plaintiff's diligence in following up on recommendations from the children's healthcare providers.  In examining these concerns, the clinician testified (and, in adopting her conclusions, the judge found) that both children required additional educational support, which made virtual learning during the pandemic "significantly challenging" for them.  She also reviewed documentary evidence demonstrating the plaintiff's follow-up with providers and reported that the delays in follow-up were "understandable" because the plaintiff was adjusting to being the sole caretaker for the children.  The clinician also concluded (and the judge found) that the plaintiff was able to advocate for the children's best interests and had ensured that they continued to see their providers.

Both parties have struggled with substance misuse.  The plaintiff reported being sober from alcohol since 2018 when she entered an inpatient detoxification program.  As to the defendant, the clinician concluded that alcohol has likely played a role in exacerbating the defendant's mental health difficulties; the defendant has been diagnosed with serious mental health disorders and takes prescribed psychiatric

3

medication. The clinician viewed it as a strength that the defendant recognized the need for professional support and has been involved with treatment providers since before the parties separated. The clinician testified that when she interviewed the defendant, the defendant evidenced no mental health concerns and seemed to be much more stable. In adopting the clinician's report and conclusions, the judge so found.

Notwithstanding the issuance of a 209A order following the defendant's hospitalization, the clinician concluded that the defendant had a minimal history of aggression toward others. There was one incident in which an argument between the parties became physical, but the judge (adopting the clinician's report) concluded that both parties played a role in that situation. The clinician reported no evidence -- outside of the plaintiff's report -- of the defendant's displaying aggressive, threatening, or violent behaviors toward anyone. The children denied having been physically threatened or injured by either parent.

At the time of trial, the parties' two children were living with the plaintiff; each had a weekly Zoom call with the defendant and they visited with her each weekend for a day and, once a month, spent the night with her. The clinician reported that earlier, supervised visits were successful, and the children enjoyed spending time with the defendant. The older

4

child expressed a desire to spend more time at the defendant's home. The clinician noted that, particularly for the older child, it was important to know that each parent supports his relationship with the other parent.

The clinician's conclusion, adopted by the judge, was that the children asked for more time with the defendant. There was no evidence to suggest the defendant would harm the children and unsupervised parenting time was recommended. The clinician recommended that both parents have access to the children's educational and medical information, including the ability to speak with providers.

The parties' home was sold by agreement and the proceeds divided as they stipulated.[1] The parties' financial statements, as per Rule 401 of the Supplemental Rules of the Probate Court (2012), reflect additional assets and debts that the judge did not allocate in the judgment.[2] The defendant requested alimony due to her prior financial reliance on the plaintiff.

---

[1] Following remand, the judgment should reflect incorporation and consideration of the terms of the parties' stipulation.

[2] The defendant filed a contempt complaint alleging that the defendant had failed to make certain payments on the house and had improperly encumbered a retirement account, thus affecting the total sum available. The parties agreed that this complaint would be resolved by the division of assets after trial. The record reveals no ruling on this contempt complaint; "[c]ontempt proceedings must satisfy the strictures of due process."

5

Discussion.  1.  Child custody.  "The determination of which parent will promote a child's best interests rests within the discretion of the judge . . .[whose] findings in a custody case 'must stand unless they are plainly wrong.'"  Rosenberg v. Merida, 428 Mass. 182, 191 (1998), quoting Prindle v. Fisk, 2 Mass. App. Ct. 843, 844 (1974).  "[W]e will not sustain an award of custody unless all relevant factors in determining the best interests of the child have been weighed" (quotation omitted).  In re Custody of Kali, 439 Mass. 834, 845 (2003), quoting Rosenberg, supra.

The defendant maintains that the judge's award of sole legal and physical custody to the plaintiff was inconsistent with the evidence (particularly the clinician's report and recommendations) and unsupported by the record.  We are not persuaded.  The clinician's testimony and report, adopted by the judge, evidence that the children's needs are met in the plaintiff's care, that she advocates for the children and ensures that they see their providers, and that the plaintiff has shielded the children from exposure to this litigation.  The clinician reported no concerns about the health and welfare of

---

Mahoney v. Mahoney, 65 Mass. App. Ct. 537, 540(2006).  The plaintiff (defendant in the contempt action) may waive her right to an evidentiary trial, see id., but it does not appear unequivocally that she did so.

6

the children, who have been in the plaintiff's care since July 2019.  She also reported that the defendant was loving toward the children (as they were toward her), that she behaved appropriately during visits, and that she should have increased parenting time.

In making the custody determination, the judge considered the fact that the defendant had been the primary parent since the parties' separation.

> "In most cases . . . if the child has been living with one parent for some time, the child's needs are being adequately met under that parent's care, and that parent is capable of continuing to care for the child, it is not in the child's best interests to disrupt that successful arrangement.  Rather, it is in the child's best interests to preserve it."

Kali, 439 Mass. at 844.  "Stability is itself of enormous benefit to a child."  Id.  The judge also noted the parties' difficulty in communicating with each other.[3]  Shared custody "is generally appropriate only if the parties demonstrate an ability and desire to cooperate amicably and communicate with one another to raise the children" (citations omitted).  Mason v. Coleman, 447 Mass. 177, 182 (2006).  "Joint custody is

---

[3] The defendant maintains that the judge gave too much weight to the 209A order because the record does not support a conclusion that the relationship included physical violence. The judge did not find that the relationship included physical violence.  We read the judge's reference to the restraining order, rather, as support for his related comment about communication difficulties between the parties.

7

inappropriate for parents whose relationship to date has been 'dysfunctional, virtually nonexistent, and one of continuous conflict.'" Smith v. McDonald, 458 Mass. 540, 553 (2010), quoting Carr v. Carr, 44 Mass. App. Ct. 924, 925 (1998). The judge addressed the geographical distance between the parties' homes, which -- he found -- made it difficult to formulate an easily workable regular shared parenting schedule.

The judgment serves the best interests of the children by (1) giving the defendant the legal right to consult with and receive information from those who provide educational, medical, therapeutic, and religious services to the children, (2) allowing the defendant parenting time every other weekend, including overnight time, and (3) setting a parenting schedule for holidays and school vacation weeks. The judge's discretionary custody determination is not "plainly wrong," and we will not disrupt it. See Rosenberg, 428 Mass. at 191.

2. Division of marital assets; alimony. "Our review of a judgment pursuant to the equitable distribution statute, G. L. c. 208, § 34, proceeds under a two-step analysis. 'First, we examine the judge's findings to determine whether all relevant factors in § 34 were considered.'" Adams v. Adams, 459 Mass. 361, 371 (2011), S.C., 466 Mass. 1015 (2013), quoting Bowring v. Reid, 399 Mass. 265, 267 (1987).

Section 34 provides,

"In fixing the nature and value of the property, if any, to be so assigned, the court, after hearing the witnesses, if any, of each of the parties, shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income, and the amount and duration of alimony, . . . [as well as] the present and future needs of the dependent children."

G. L. c. 208, § 34.

Although "a probate judge acting under G. L. c. 208, § 34, has broad discretion to assign assets" (citation omitted), Denninger v. Denninger, 34 Mass. App. Ct. 429, 430 (1993), such discretion "is not unbounded" and "[i]t is the duty of a reviewing court to consider whether the apportionment of assets flows rationally from the judge's findings under § 34" (citations omitted). Id. at 430-431.

Chapter 208, § 53, sets out the factors that apply to the grant, amount, and duration of alimony, which the defendant requested but did not receive. See G. L. c. 208, § 53 (a); Zaleski v. Zaleski, 469 Mass. 230, 236 (2014). "Section 53 (a) does not permit judges to deny a request for alimony without making a fact-specific inquiry into the parties' circumstances, as evaluated through the application of [the] mandatory

9

statutory factors." Cavanagh v. Cavanagh, 490 Mass. 398, 409 (2022).

In this case, the judge made no findings under Section 34. He also made no findings as to the request for alimony, only concluding that, "Neither party shall pay alimony to the other at the present time." Despite pretrial litigation related to alleged waste of the marital estate, see note 2, and a dispute at trial about assets in the plaintiff's retirement account, the judge made no findings whatsoever. It "constitute[s] an abuse of discretion if findings of fact [are] not supported by the record or conclusions fail[] to reflect consideration of applicable legal principles" (citations omitted). Greenberg v. Greenberg, 68 Mass. App. Ct. 344, 348 (2007). Because of the lack of findings and the judgment's silence on certain requested relief, a remand is necessary.

Conclusion. So much of the judgment as pertains to alimony and property division is vacated, and the case is remanded for the judge to reconsider those issues, make findings required by G. L. c. 208, §§ 34, and 53 (a), and issue an amended judgment of divorce, consistent with this memorandum and order. The

judgment of divorce is affirmed in all other respects.  On remand, the judge shall also address the contempt complaint.

<u>So ordered</u>.

By the Court (Meade, Hershfang & Toone, JJ.[4]),

Clerk

Entered:  October 23, 2024.

---

[4] The panelists are listed in order of seniority.