MARLENE MORALES *vs.* RICHARD LOUIS MORALES.

Worcester. November 5, 2012. - March 12, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Divorce and Separation,* Modification of judgment, Child support. *Parent and Child,* Child support.

A complaint requesting modification of a child support order included in a divorce judgment required remand where the probate judge erred in applying a material and substantial change standard rather than an inconsistency standard, as required by G. L. c. 208, § 28. [509-515]
Discussion of issues likely to arise on remand of a complaint requesting modification of a child support order included in a divorce judgment. [515-516]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on April 28, 2006.

A complaint for modification, filed on April 29, 2009, was heard by *Susan D. Ricci,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Ruthanne Withers* for the plaintiff.

The following submitted briefs for amici curiae:

*Marilyn Ray Smith,* pro se.

*Stephanie E. Goldenhersh, Shira C. Hoffman, & Jennifer Ramos* for Harvard Legal Aid Bureau.

*Martha Coakley,* Attorney General, & *Iraida J. Alvarez,* Assistant Attorney General, for Department of Revenue.

BOTSFORD, J. This case concerns the modification of a child support order, and in particular, the standard to be used by a Probate and Family Court judge in reviewing a complaint for modification. The child support order at issue is included in a 2008 divorce judgment that requires the defendant, Richard

Louis Morales (father),[1] to make weekly child support payments to the plaintiff, Marlene Morales (mother), for support of their minor child. In 2009, approximately one year after the divorce judgment, and following the father's job promotion, the mother filed a complaint requesting the modification of the child support order to reflect the father's increase in income. Following a trial before a judge in the Probate and Family Court, the judge found that there was no "material and substantial change of circumstances and no modification [was] warranted," and dismissed the complaint.

We conclude that the trial judge, in ruling on the mother's modification complaint, erred in applying a standard requiring a material and substantial change in circumstances (material and substantial change standard) rather than the standard set forth in G. L. c. 208, § 28, as amended through St. 1998, c. 64, §§ 194, 195 (§ 28),[2] which provides that a child support order shall be modified "if there is an inconsistency between the amount of the existing order and the amount that would result from application of the child support guidelines"[3] (inconsistency standard). Accordingly, we remand for the judge to consider the child support modification request under the statutory inconsistency standard.

1. *Background.* The parties' child was born on August 4, 1998. The mother and father were divorced by a judgment of divorce nisi dated May 5, 2008, that granted shared legal custody of the child and physical custody to the mother. The judgment included a child support order directing the father to pay $172 per week in child support to the mother. In August, 2008, the father, a correction officer at the Massachusetts Correctional Institution at Shirley, received a promotion to the position of

[1]The father has not filed an appearance before this court. We acknowledge the amicus briefs of the Department of Revenue, the Harvard Legal Aid Bureau, and Marilyn Ray Smith that were submitted in support of the plaintiff.

[2]General Laws c. 208, § 28 (§ 28), was amended again in 2011. St. 2011, c. 93, § 37. The amendment replaced the chief justice "for administration and management" with the chief justice "of the trial court" as the promulgator of the guidelines, see note 3, *infra*, and has no material effect on our discussion. Throughout this opinion we refer to the statute as amended through 2011.

[3]The "child support guidelines" referred to in § 28 are promulgated periodically by the Chief Justice of the Trial Court. See note 2, *supra*; Child Support Guidelines (2009) (guidelines, or 2009 guidelines).

inner perimeter officer, resulting in an increase in his salary and his average weekly income from overtime. On April 29, 2009, the mother filed a complaint for modification of the child support order in the Probate and Family Court, claiming that the father's new position and increased salary had changed the circumstances underlying the original support order and requesting an increase in the amount of weekly support to reflect the amount required by application of the Massachusetts Child Support Guidelines (2009) (guidelines, or 2009 guidelines).

The modification complaint was tried in December, 2009. At the trial, in response to the suggestion of the mother's counsel that the guidelines permit the judge to consider overtime in calculating income, the judge stated: "Well, I don't. I just don't. So everybody should know that right up front. I do not include overtime." Following the trial, the judge dismissed the modification complaint on December 21, 2009, finding that the increase in the father's income was "not . . . a material and substantial change of circumstances and no modification is warranted." Some months later, the judge issued her opinion containing findings of fact and conclusions of law in support of the previously entered judgment of dismissal. The judge found that the father's change in income, combined with a decrease in living expenses of the mother and an increase in living expenses of the father, did not amount to "a substantial or material change in circumstances" to warrant an increase in the father's child support obligation under § 28. The judge also declined to include the father's overtime pay in her calculation of his weekly income because "[overtime] is not always available to him and is not a requirement of his employment," and because the father had parenting responsibilities to other children.

The Appeals Court affirmed the dismissal in an unpublished memorandum and order issued pursuant to its rule 1:28. *Morales* v. *Morales*, 80 Mass. App. Ct. 1110 (2011). The court agreed with the judge that the material and substantial change in circumstances standard was the correct legal standard to apply and that she had correctly determined that there was no material change in circumstances. We granted the mother's application for further appellate review.

2. *Discussion.* The method for calculating and modifying

child support orders is governed by statute and by the guidelines.[4] General Laws c. 119A sets forth the Commonwealth's general policy governing child support enforcement.[5]

Section 13 (*c*) of that chapter provides:

> "[i]n any proceeding to establish or modify an amount of child support, the child support guidelines promulgated by the chief justice of [the trial court] shall apply. There shall be a rebuttable presumption that the amount of the order which would result from the application of the guidelines is the appropriate amount of child support to be ordered."[6]

G. L. c. 119A, § 13 (*c*). This same presumption is incorporated in other sections of the General Laws pertaining to child support orders that arise in different contexts, including § 28. See G. L. c. 208, § 28 (child support orders for children of divorced parents); G. L. c. 209, § 37 (orders for children of separated parents); G. L. c. 209C, § 20 (orders for children born out of wedlock). Because the order in this case was issued as part of a

---

[4] By their terms, the 2009 guidelines do not apply in cases where the combined annual gross income of the parties exceeds $250,000. Guidelines II.C. See, e.g., *Cooper* v. *Cooper*, 62 Mass. App. Ct. 130, 133, 135 (2004). The discussion that follows relates only to cases where the guidelines apply.

[5] General Laws c. 119A also provides for child support enforcement services in accordance with the provisions of Title IV, Part D of the Social Security Act, 42 U.S.C. §§ 651-669b (2006) (Title IV-D). Section 1 of G. L. c. 119A designates the Department of Revenue as the Commonwealth's "IV-D agency" to administer IV-D services. "IV-D services," in turn, are defined as "child support enforcement services . . . required by Title IV, Part D of the Social Security Act, as appropriate, with respect to each child for whom public assistance is provided . . . under . . . public assistance programs as required by federal or state law . . . and any other child [with respect to whom an application for services is made]." G. L. c. 119A, § 1A. See G. L. c. 119A, § 2 (describing IV-D services provided).

[6] This presumption may be rebutted, and a judge establishing a child support order may deviate from the amount of support dictated by application of the 2009 guidelines, provided the judge makes written findings specifying that "the guidelines amount" would be unjust or inappropriate, that departure from the guidelines is justified by the facts of the case, and that departure is consistent with the child's best interests. See G. L. c. 119A, § 13 (*c*); 2009 guidelines IV. In this case, the judge made no findings indicating that she intended to deviate from the guidelines. We therefore consider the case as one to which the guidelines apply.

divorce judgment, § 28 governs. With respect to modifications of child support orders, § 28 provides in relevant part:

> "In furtherance of the public policy that dependent children shall be maintained as completely as possible from the resources of their parents and upon a complaint filed after a judgment of divorce, *orders of maintenance and for support of minor children shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from the application of the child support guidelines* promulgated by the chief justice [of the trial court] or if there is a need to provide for the health care coverage of the child" (emphasis supplied).

"We start with the proposition that where the statutory language is clear, the courts must give effect to the plain and ordinary meaning of the language." *Victor V.* v. *Commonwealth*, 423 Mass. 793, 794 (1996), and cases cited. The "plain and ordinary" meaning of the quoted language is that when a complaint seeking modification of a child support order is filed, modification is presumptively required whenever there is an inconsistency between the amount of child support that is to be paid under the existing support order and the amount that would be paid under the guidelines.[7] See, e.g., *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983), citing *Johnson* v. *District Attorney for the N. Dist*, 342 Mass. 212, 215 (1961) ("The word 'shall' is ordinarily interpreted as having a mandatory or imperative obligation"). Nothing here or elsewhere in § 28 establishes a separate and additional requirement that the discrepancy or

---

[7]Computation of child support amounts under the guidelines involves use of the Child Support Guidelines Worksheet, which sets forth a mathematical formula for calculating weekly child support amounts, and reference to the guidelines, which include definitions of the various factors involved in the formula. See 2009 Child Support Guidelines Worksheet; Guidelines II. Child support is "calculated as a percentage of parental income, up to a maximum income amount." *M.C.* v. *T.K.*, 463 Mass. 226, 232 (2012).

The text of § 28 makes clear that the rebuttable presumption applicable to an initial child support order issued pursuant to § 28 — namely, that the amount that results from application of the guidelines is the appropriate amount of child support to be ordered — applies in the modification context as well, as does the availability of deviation from the guidelines, if supported by proper findings.

inconsistency between the existing order and the guidelines amount of child support result from a material and substantial change in circumstances.[8] The quoted language embodies the inconsistency standard, and it properly governs consideration of a child support modification request to which § 28 applies.[9]

The judge did not apply the inconsistency standard in this case. Instead, although she cited § 28 as the basis for her decision, she applied the material and substantial change standard. This was error, and remand of the case is necessary to permit consideration of the mother's modification request under the appropriate legal standard. See, e.g., *Smith* v. *McDonald,* 458 Mass. 540, 550 (2010) (remanded for reconsideration of custody and visitation orders under correct legal standards). However, before discussing specific claims of the mother that may arise on remand, we consider the provisions in the 2009 guidelines governing modification requests, because, as the Appeals Court concluded, these provisions clearly purport to apply in the present case.

---

[8]The point is reinforced by the history of § 28. Prior to its amendment in 1993 (St. 1993, c. 460, §§ 60-62), § 28 provided that the material and substantial change standard was the correct standard for determining whether to modify a custody judgment or a child support order. See G. L. c. 208, § 28, as amended through St. 1991, c. 173, § 1. The 1993 amendment to § 28 clearly separated custody determinations from child support orders, applying the material and substantial change standard to modifications of custody orders and the inconsistency standard to modifications of child support orders. Compare § 28, first par., fourth sentence (after divorce, on complaint, court may modify prior judgment as to "the care and custody of the minor children" on finding that occurrence of a "material and substantial change in the circumstances of the parties" and best interests of children make modification necessary), with § 28, first par., fifth sentence (after divorce, on complaint, "orders of maintenance and for support of minor children shall be modified if there is an inconsistency between [existing child support order and guidelines amount]").

[9]We add the following. First, use of the inconsistency standard to review child support modification requests does not mean that a complaint for modification may be used as a substitute for or an alternative to the normal appellate process; appeal remains the proper method to challenge the validity of a child support order as initially determined. Second, under the inconsistency standard, *some* change of circumstances must occur in order for a modification request properly to be made. That is, assuming no change in the guidelines, if the amount of child support set in the initial order was calculated in accordance with the guidelines, there must be some change of circumstances in order for an inconsistency with the guidelines amount to exist.

The 2009 guidelines state in pertinent part:

"A child support order may be modified if any of the following circumstances exist:

(1) the existing order is at least three years old; or

(2) health insurance previously available at reasonable cost is no longer available (or if available but not at reasonable cost); or

(3) health insurance not previously available to a party at reasonable cost has become available; or

(4) any other *material change in circumstances* has occurred" (emphasis supplied).

2009 guidelines III.A. These modification provisions appear to provide that *any* child support order less than three years old may be modified only if there has been either (1) a change in health insurance coverage, or (2) a material change in circumstances.[10] In so limiting the availability of modification, the 2009 guidelines are themselves not consistent with the inconsistency standard set out in § 28, at least with respect to modification requests filed less than three years after the date of the original child support order.

This discrepancy between statute and guidelines may have a historical explanation. Under applicable provisions of Federal statutes, a State's receipt of certain Federal grants and reimbursements is conditioned on the State's creation of guidelines for child support that meet specific statutory and regulatory criteria.[11]

---

[10]The Appeals Court in its unpublished memorandum and order so construed the modification provisions of the 2009 guidelines. See *Morales* v. *Morales*, 80 Mass. App. Ct. 1110 (2011). According to its amicus brief, the Department of Revenue interprets the modification provisions in the same manner. See note 5, *supra*.

[11]See 42 U.S.C. § 655(a)(1)(A) (2006) (mandating payments to States for percentage of amount expended by State for operation of State plan for child and spousal support); *id.* at § 602(*a*)(2) (State eligibility for temporary assistance for needy families grants conditioned on approval of State plan with child support enforcement program); *id.* at § 667 (approval of State plan conditioned on establishment of child support guidelines); *id.* at § 654(20)(A) (requiring State plan to comply with procedures set forth in § 666); *id.* at § 666 (setting forth certain procedures for child support guidelines).

The Family Support Act of 1988, an amendment to Title IV, Part D, of the Social Security Act, 42 U.S.C. §§ 651-669b (2006 & Supp. V 2011) (Title IV-D), mandated periodic review and adjustment of child support orders pursuant to a State's child support guidelines. See Pub. L. 100-485, 100th Cong., 2d Sess., 102 Stat. 2343 (1988). The Federal implementing agency, the United States Department of Health and Human Services, interpreted the 1988 statutory amendment to preclude a State's use of the material and substantial change standard in the context of modification of a child support order.[12] Following the passage of the Family Support Act of 1988 and implementing regulations, the Massachusetts Legislature amended § 28 to provide that child support modifications would thereafter be governed by the inconsistency standard.[13] Although there have been subsequent amendments to Title IV-D that reflect yet additional changes to the Federal legal standard applicable to support order modifications,[14] the inconsistency standard in § 28 has not been amended to take these Federal statutory amendments into account.[15] Accordingly, we are bound to apply the provisions of § 28 as written. *Commonwealth* v. *Russ R.*, 433 Mass. 515, 520 (2001), quoting *Commissioner of Revenue* v. *Cargill,*

[12]See, e.g., 57 Fed. Reg. 61559, 61577 (Dec. 28, 1992) ("We recognize that the traditional 'substantial change in circumstances' test is applicable in many States. However, we believe that . . . the Congress intended that States use guidelines as the basis for determining the need to change the amount of the child support award, rather than any other standard").

[13]See St. 1993, c. 460, §§ 60-62. See also G. L. c. 209, § 37, as amended through St. 1993, c. 460, § 66 (adding inconsistency standard); G. L. c. 209C, § 20, as amended through St. 1993, c. 460, § 83 (adding inconsistency standard). We are informed by several amici, including the Department of Revenue and former deputy commissioner of that department's child support enforcement division, that this change in § 28 was made to conform Massachusetts law to the Federal standard.

[14]See 42 U.S.C. § 666(a)(10)(A)(iii)-(B) as amended by Pub. L. 104-193, § 351, 104th Cong., 2d Sess., 110 Stat. 2239 (1996); 45 C.F.R. § 303.8(b)(5) (2011).

[15]It appears that the Legislature has amended G. L. c. 119A, § 3B (*g*), a statute that applies to modification requests in cases where the Department of Revenue is providing Title IV-D services, to reflect the 1996 amendments to Title IV-D cited in note 14, *supra*, and accompanying text. See G. L. c. 119A, § 3B (*g*), as amended through St. 1998, c. 64, § 77. The 2009 guidelines may be consistent with G. L. c. 119A, § 3B (*g*), but because there is no indication in this case that the parties received any Title IV-D services, the amended version of the statute has no application here.

*Inc.*, 429 Mass. 79, 82 (1999) ("Where, as here, the language of the statute is clear, it is the function of the judiciary to apply it, not amend it").

3. *Remaining issues.* We turn to other issues raised by the mother that may arise on remand.[16]

The mother contends that the stated position of the judge — that she never considers a payor's overtime income when calculating a child support order — constitutes an error of law. The 2009 guidelines define income as "*gross income from whatever source*" including income from "salaries, wages, *overtime* and tips" (emphasis supplied). Guidelines I.A. While the guidelines permit a judge to "disregard[] income, in whole or in part, from overtime," the judge must first give "due consideration . . . to certain factors including but not limited to the history of the income, the expectation that the income will continue to be available, the economic needs of the parties and the children, the impact of the overtime on the parenting plan, and whether the extra work is a requirement of the job." Guidelines I.B.

In her findings, the judge stated that although the "[f]ather averages overtime income of $100.00 per week . . . [t]he court declines to include this amount in his weekly income as it is not always available to him and is not a requirement of his employment" and because of his parenting responsibilities to other children. Considered in isolation, these reasons may well comply with the 2009 guidelines, although arguably the guidelines embrace a more generous approach to the inclusion of overtime in income calculation than the one adopted by the judge.[17] However, where the judge announced at the beginning of the trial that "everybody should know that right up front. I do not include overtime," we are concerned that the judge created at least an appearance that even though she later made findings, she did not give a fair consideration to the facts of the case in

---

[16]Because of the passage of time, on remand the parties will presumably present updated financial statements that may in turn alter the factual basis on which the mother's modification complaint will be resolved.

[17]The record reflects that the father's promotion was accompanied by consistent overtime work: the father earned $100 in average weekly income from overtime in 2009, and he earned overtime in sixteen out of twenty-one pay periods from January to mid-October, 2009, after his promotion, as compared with only eight out of twenty-six pay periods in 2008.

deciding to exclude overtime. An inflexible rule that overtime not be included in the calculation of income would be at odds with the 2009 guidelines, which clearly mandate consideration of specific factors prior to a decision to disregard overtime income. If the father's receipt of overtime pay is again at issue on remand, the guidelines' mandate must be applied.

The mother also argues that the judge's findings with respect to the amount by which the father's income increased are clearly erroneous. The mother's position is that the judge should have based her income calculations on the father's base pay, overtime, and roll call and longevity pay as listed on the father's sworn 2008 and 2009 financial statements and as to which the father testified at trial. Instead, the mother argues, the judge erroneously calculated the father's increase in income based solely on the increase in his base hourly wage rate between 2008 and 2009 that she calculated using two individual paystubs that were attached to the father's financial statements. The judge did not explain why she limited her calculation to the hourly wage information derived from the two paystubs instead of the sworn financial statements, or why she did not consider the roll call and longevity pay components; we are not able to discern the judge's rationale from the record itself. On remand, the reasons supporting the methods used by the judge to determine the amount of each party's income should be supplied.

4. *Conclusion.* The matter is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

*So ordered.*