NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-106                                        Appeals Court

JOHANNE FAZIO  vs.  KEITH FAZIO.

No. 16-P-106.

Plymouth.      November 7, 2016. - February 24, 2017.

Present:  Cypher, Massing, & Sacks, JJ.

Federal Servicemembers Civil Relief Act.  Practice, Civil, Stay
    of proceedings.  Parent and Child, Child support.  Divorce
    and Separation, Child support, Division of property.

Complaint for divorce filed in the Plymouth Division of the
Probate and Family Court Department on November 17, 2006.

The case was heard by Catherine P. Sabaitis, J.

David P. Sorrenti for the husband.
Leonard F. Zandrow, Jr., for the wife.

MASSING, J.  In this appeal from an amended judgment of

divorce nisi, Keith Fazio (husband), a major in the Army

National Guard who repeatedly saw active duty over the course of

the divorce proceedings, contends that the Probate and Family

Court judge violated the Federal Servicemembers Civil Relief

Act, 50 U.S.C. app. §§ 501 et seq. (2006) (SCRA),[1] by issuing certain temporary orders in his absence.  He also claims that the judge abused her discretion by disproportionately allocating marital assets to Johanne Fazio (wife).  Although we conclude that the husband's request for a stay did not satisfy the SCRA requirements, the temporary orders nonetheless failed to comply with the applicable provisions of the Massachusetts child support guidelines (guidelines), and we remand the case for further proceedings regarding the subject matter of these orders.  We discern no abuse of discretion in the allocation of the marital estate.

Background.  The husband and the wife married in 1992, had three daughters together, and permanently separated in late 2006, when this divorce action was filed.  The husband was a commissioned officer of the Army National Guard, eventually rising to the rank of major.  He was deployed to active duty six times between 2003 and 2012.  Recognizing that the husband's military service was "selfless and honorable," the judge found that his frequent long-term deployments were "a major factor in the deterioration of the family and the marriage."

---

[1] The Office of the Law Revision Counsel of the United States House of Representatives has eliminated the Appendix to title 50 of the United States Code and has editorially reorganized its provisions.  The SCRA is now found in the online version of the United States Code at 50 U.S.C. §§ 3901 et seq. The reorganization of the printed version is planned to be effective with supplement III to the 2012 edition.

The wife was the primary caretaker of the children, who all lived with her since the separation. She also was their sole caregiver when the husband was on active duty status. Although both parties contributed to the purchase and the maintenance of the marital home, the wife assumed financial responsibility for the home after the separation. The judge found that the parties enjoyed a middle-income life-style during the marriage, but that their station in life was "more modest" by the time of trial, which was held in April and May of 2013. The judge explained that it took six and one-half years to bring the case to trial in part because of the husband's unavailability, further delayed and complicated by difficulties in obtaining and verifying his financial information, as well as the parties' inability to cooperate with each other.

The amended judgment of divorce nisi gave sole legal and physical custody of the children to the wife, obligated the husband to pay $397 per week in child support, and otherwise divided the child-related expenses in a manner acceptable to both parties. No alimony payments were ordered.[2] The judge allocated the marital home (with an equity value of $352,137 at the time of trial) to the wife and the husband's townhouse

_____

[2] The judge found that "[t]he parties' educational levels and ability to earn income are reasonably equivalent, with a slight advantage to Husband, as demonstrated by his historical earnings."

(equity value $32,000 at the time of trial) to the husband.  The
parties each kept their own home furnishings, personal property,
and bank and retirement accounts, with two exceptions:  the
judge ordered the wife to convey thirty percent of the value of
her largest retirement account[3] to the husband, and ordered the
husband to convey fifty percent "of the gross amount of his
military pension" to the wife.

As a result, the wife received approximately two-thirds of
the marital assets.[4]  The judge explained that the property
division was based on "the parties' respective monetary and non-
monetary contributions to the marital estate, as well as their
respective efforts to preserve the marital estate."  Although
their "contributions" to the estate were "reasonably
equivalent," the judge found that the wife "played a far more
significant role in the preservation of the estate by her
management of the family's income and assets during Husband's
absence."

---

[3] As discussed infra, the husband disputes how the judge
valued this account.

[4] This percentage is only approximate because it does not
include the value of the husband's military pension in the
estate, nor account for its allocation between the parties.  The
judge found that it was not possible to calculate the dollar
value of the husband's retirement points accumulated during the
marriage.

Discussion.  1.  Request for stay under SCRA.  The husband contends that the judge violated the SCRA[5] by denying his request for a stay, holding a hearing, and issuing orders in his absence.[6,7]

---

[5] The Massachusetts Soldiers' and Sailors' Civil Relief Act, St. 1943, c. 57, has no application in divorce or child custody matters; it applies only in the context of mortgage foreclosures.  See HSBC Bank USA, N.A. v. Matt, 464 Mass. 193, 195 n.3 (2013).

[6] The husband's SCRA claim concerns the pretrial hearings held on March 21, 2007; September 3, 2008; and October 7, 2010. We address only the October 7, 2010, hearing.  He did not request a SCRA stay of either the March 21, 2007, or the September 3, 2008, hearing.  Moreover, he was represented by counsel at the March 21, 2007, hearing, and the husband's contentions with respect to the September 3, 2008, hearing, described in a single paragraph of the facts section of his brief, and mentioned only in the title of the relevant argument section, do not rise to the level of appellate argument.  See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); Cameron v. Carelli, 39 Mass. App. Ct. 81, 85-86 (1995).

[7] The husband timely filed a notice of appeal from the amended judgment of divorce nisi dated July 16, 2014, which incorporated the judge's temporary order from the October 7, 2010, hearing.  The notice of appeal did not specify that he was also appealing from the interlocutory order of March 21, 2007, discussed infra.  See Mass.R.A.P. 3(c), as appearing in 430 Mass. 1602 (1999) (notice of appeal "shall, in civil cases, designate the judgment, decree, adjudication, order, or part thereof appealed from").  The wife, however, briefed the case as if the husband had properly appealed from both the amended judgment and the interlocutory orders, and she has not claimed that she was misled by the notice of appeal.  Accordingly, we proceed as if the notice of appeal were sufficient.  See Carter v. Empire Mut. Ins. Co., 6 Mass. App. Ct. 114, 117 n.3 (1978); Palriwala v. Palriwala Corp., 64 Mass. App. Ct. 663, 667-669 (2005).

Under the SCRA, a person in military service is entitled to a continuance in "any civil action or proceeding, including any child custody proceeding," 50 U.S.C. app. § 522(a) (2006 & Supp. IV 2011)[8] upon a showing that military service prevents the person from appearing in court. "While the act does not arbitrarily stay all trials, it should be liberally construed so as to protect the civil rights of those serving in our armed forces during the tenure of their service." State v. Wilson, 234 Minn. 570, 572 (1951).

The husband sought a stay of the October 7, 2010, hearing by sending a letter by facsimile to the Probate and Family Court on the afternoon of October 6. The letter, written by the husband's commanding officer,[9] stated that the husband's unit "will be conducting pre-deployment training from 1 October through 28 November 2010 in preparation for our mobilization which will occur on 29 November 2010." The commanding officer stated that the deployment would last approximately one year and "request[ed] that court hearings be postponed due to the

---

[8] To be renumbered as 50 U.S.C. § 3932. See note 1, supra.

[9] The letter, signed by "Gerard D. Walsh, MAJ, IN, Commanding," is written on United States Department of the Army stationery from an Army reserve center in Warwick, Rhode Island. Major Walsh states in the letter that the husband is "a member of the Army Reserve unit that [he] command[s]." We reject the wife's contention that Major Walsh must have misrepresented his status as commanding officer because the husband also had attained the rank of major.

[husband's] inability to defend his interests, in accordance with the stipulations of the Servicemembers' Civil Relief Act."

The judge, who in early 2009 had entered an SCRA stay until the husband's return from a tour of duty in Iraq, and also had appointed "military counsel" to represent him, expressed frustration at the last-minute request for another continuance. She declined to stay the proceedings and entered an order, at the wife's request, requiring the husband's basic allowance for housing (BAH) to be deposited in the wife's checking account.[10]

The SCRA provides for a mandatory[11] stay of at least ninety days upon a proper request by a qualifying servicemember. See 50 U.S.C. app. § 522(b)(1) (2006) ("the court may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than 90 days, if the conditions in paragraph [2] are met"). To make a proper request, the servicemember must set forth the factual basis for the request -- that is, "the manner in which current military

---

[10] The judge also, sua sponte, gave the wife sole legal and physical custody of the couple's three children during the husband's deployment.

[11] Prior to the 2003 amendments, the Federal statute, then known as the Soldiers' and Sailors' Civil Relief Act of 1940, gave judges the discretion to determine whether military service materially affected a servicemember's ability to litigate the case. 50 U.S.C. app. § 521 (2000). As amended, the SCRA provides for automatic stays, but requires the servicemember to justify the stay with specific information and to inform the court when the case might proceed. See, e.g., Hernandez v. Hernandez, 169 Md. App. 679, 690 n.3 (Md. Ct. Spec. App. 2006).

duty requirements materially affect the servicemember's ability to appear" -- and the date the servicemember will next be available. 50 U.S.C. app. § 522(b)(2)(A) (2006). In addition, the request must include the commanding officer's statement "that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter." 50 U.S.C. app. § 522(b)(2)(B) (2006).[12]

_____

[12] The relevant provision, in its entirety, reads as follows:

"(b) Stay of proceedings.

"(1) Authority for stay. At any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, the court may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than 90 days, if the conditions in paragraph (2) are met.

"(2) Conditions for stay. An application for a stay under paragraph (1) shall include the following:

"(A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.

"(B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter."

Whether the request is adequate under the SCRA is a question of law, subject to de novo review on appeal. See Matter of Marriage of Bradley, 282 Kan. 1, 5 (2006). We detect no error in the judge's denial of the stay. The commanding officer's communication provided no details about the husband's predeployment training and did not explain how the requirements of the training mission prevented the husband from taking part of one day to attend a court hearing. Nor did the commanding officer state that the husband could not obtain leave to appear at the hearing at any time during the two months prior to mobilization. See id. at 5-6 (denial of request for SCRA stay of child custody hearing affirmed where servicemember's request did not state when he would be available to appear and lacked statement from commanding officer establishing requisites of SCRA); King v. Irvin, 273 Ga. App. 64, 67 (2005) (request for stay of personal injury case denied where request did not include necessary information under SCRA). Although the judge, in her discretion, could have allowed the stay notwithstanding the incomplete request, she did not abuse her discretion in denying a stay of the October 7, 2010, hearing.

---

50 U.S.C. app. § 522 (2006).

2.  Review of temporary orders.[13]  The husband challenges

the temporary order entered on March 21, 2007, raising his child

support payment obligation from $450 to $1,000 per week,[14] and

the order entered on October 7, 2010, requiring the husband's

total BAH to be transferred directly from his military paycheck

into the wife's checking account.[15]  Both orders are problematic.

The judge clearly possessed the power to issue temporary

child support orders during the pendency of the divorce action.

See G. L. c. 208, § 19; Diver v. Diver, 402 Mass. 599, 602

(1988).  "The method for calculating and modifying child support

_____

[13] In general, temporary orders are interlocutory and not
immediately reviewable.  See McDonnell v. McDonnell, 39 Mass.
App. Ct. 932, 932-933 (1995) ("The case falls within the general
rule that the correctness of an interlocutory order will not be
reviewed on appeal before a final judgment has been entered").
See also Mass.R.A.P. 3(a), as amended, 378 Mass. 927 (1979) ("A
party need not claim an appeal from an interlocutory order to
preserve his right to have such order reviewed upon appeal from
the final judgment"); Borman v. Borman, 378 Mass. 775, 779-780
(1979) (appeal from interlocutory order of probate judge under
G. L. c. 215, § 9, lies dormant until appeal from final
judgment); Mancuso v. Mancuso, 10 Mass. App. Ct. 395, 403 (1980)
(husband's appeal from increase in amount of temporary support
order premature; assembly of record vacated, "leaving the claim
of appeal intact for consideration, if necessary," upon final
judgment).

[14] This order remained in effect until April 17, 2008, when
the child support obligation was reduced back to $450 upon the
husband's return from active duty.

[15] The judge found that between the date of the latter order
(October 7, 2010) and the date of trial, "the sum of $29,227.08
was garnished from Husband's paycheck."  In the property
division, the judge allowed the wife to deduct from the funds to
be transferred to the husband an amount equaling "fourteen
month[s] of BAH payments at the rate of $2,379 per month."

orders is governed by statute and the guidelines." Morales v. Morales, 464 Mass. 507, 509-510 (2013). The guidelines "are formulated to be used . . . in setting temporary, permanent or final orders for current child support." Massachusetts Child Support Guidelines, preamble (2006).

Under G. L. c. 119A, § 13(c), a rebuttable presumption exists that a child support order resulting from application of the guidelines is appropriate. A judge may deviate from the guidelines calculation, "provided the judge makes written findings specifying that 'the guidelines amount' would be unjust or inappropriate, that departure from the guidelines is justified by the facts of the case, and that departure is consistent with the child's best interests." Morales, supra at 510 n.6, citing G. L. c. 119A, § 13(c), and Massachusetts Child Support Guidelines, IV (2009).[16]

The judge allowed the wife's motion for a modification of the husband's child support obligation at the March 21, 2007,

---

[16] The guidelines effective February 15, 2006, also require "[a] specific, written finding that the guidelines would be unjust or inappropriate and that the best interests of the child have been considered" in all cases of deviation from the guidelines calculation. Massachusetts Child Support Guidelines, preamble (2006). See Report of the Child Support Guidelines Task Force 17 (Oct. 2008), available at http://www.mass.gov/courts/docs/child-support/task-force-report.pdf [http://perma.cc/G3K3-6LYD] (2006 guidelines "clarified that the Court must make written findings for all orders that provide an amount different than the presumptive payment under the guidelines").

hearing based on the fact that the husband's salary had increased and his personal expenses decreased, as a result of his active duty. The wife argued that "it isn't a guideline situation because it's so unusual." The judge issued an order of $1,000 per week, which plainly exceeded the presumptive payment from the 2006 guidelines.[17] Yet "[t]he judge made no finding that the application of the guidelines would be unjust or inappropriate in this case." Fleming v. Fleming, 62 Mass. App. Ct. 103, 107-108 (2004). Accordingly, the temporary child support order constituted an abuse of discretion.[18] See Wasson v. Wasson, 81 Mass. App. Ct. 574, 579 (2012).

As noted, a hearing was scheduled for October 7, 2010, regarding the wife's motion for further temporary orders. When the husband did not appear, but instead sent an eleventh-hour facsimile requesting a stay, the tenor of the hearing changed.

---

[17] The parties have not provided us with the documents concerning the husband's salary on which they and the judge relied at the hearing; however, based on the information available to us, if we indulge all inferences about the parties' gross income and expenses in favor of the wife -- including considering all of the BAH as income -- our calculation of the guidelines amount results in a weekly payment of no more than $700.

[18] Because the guidelines and case law require findings, and the necessary findings were not made, we cannot assume from a silent record that the judge considered all the required factors. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (judge's discretionary decision constitutes abuse of discretion where she made clear error of judgment in weighing relevant factors such that decision falls outside range of reasonable alternatives).

Rather than press the wife's request for the specific relief in the temporary order, counsel targeted the husband's BAH and suggested that "the only way we're going to be able to force [the husband] to appear in this court is to give [the wife] an order where she can have that basic allowance [of] housing," and that such an order "will get his attention."  Although the judge did express respect for the husband's service, she nonetheless allowed the wife's request for an order directing the BAH to be paid directly from his paycheck to her.

In the absence of findings to justify this action, garnishment of the entire BAH was an abuse of discretion.  To be sure, the guidelines define income broadly.  See, e.g., Zaleski v. Zaleski, 469 Mass. 230, 243 n.20 (2014); Whelan v. Whelan, 74 Mass. App. Ct. 616, 625 (2009).  Indeed, the guidelines in effect as of the date of this hearing specifically included "military pay, allowances and allotments."  Massachusetts Child Support Guidelines, I.A.10 (2009).  Accordingly, the judge would have been warranted in modifying the husband's child support obligation by increasing his income to account for his BAH and determining the new guidelines amount.  See Morales, 464 Mass. at 511; Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 8 (2016).

However, nothing apparent on the record justifies the action taken here.[19]

3. Asset distribution. In dividing the marital assets in the judgment of divorce nisi, the judge valued the assets as of the time of trial. However, the judgment was silent regarding whether the wife's largest retirement account -- thirty percent of which she was directed to convey to the husband -- was to be valued as of the date of separation or the date of trial.[20] The wife subsequently filed a motion for relief from judgment, in

---

[19] In their briefs, the parties argue whether the BAH is intended for the husband's expenses or for those of his family members. This issue was not developed at trial. The judge simply noted in her rationale the husband's argument that "approximately 80% of that sum was meant for his own support," but that she was "not inclined to retroactively modify that 3-year-old order, and thus, Husband is responsible for payment of same." On remand, the judge is free to consider the parties' arguments and to resolve the issues accordingly -- but must provide a written explanation to exceed the guidelines.

In addition, the judge noted that $29,227.08 was garnished from the husband's paycheck after the October 7, 2010, order. In ordering the wife to convey thirty percent of her retirement account to the husband, she allowed the wife to deduct "fourteen month[s] of BAH payments at the rate of $2,379 per month." Not only did the judge erroneously allocate the entire BAH to the wife, it is possible that this amount was allocated to the wife twice. On remand the judge should clarify the amount of BAH payments the wife already received and whether the husband is entitled to any reimbursement.

[20] In her findings of fact, the judge noted that the wife's retirement account "was valued at $453,509 as of 2006 (the date of separation)" and "was valued at $623,416.69 as of the time of trial." The judgment, however, stated only that the "Wife shall convey to Husband a sum equal to 30% . . . of her 401(k) account," without specifying the valuation date.

which she called this ambiguity to the judge's attention.  The wife argued that the account should be valued as of the date of separation because she was the sole contributor to the account, she was solely responsible for maintenance of the household postseparation, and the delay in adjudication of the divorce was attributable to the husband.  The husband did not file an opposition or request a hearing.  The judge then ordered the entry of an amended judgment specifying that the account should be valued as of "the time that this Complaint was filed."

The husband argues that the judge erred in valuing the wife's retirement account -- and only that account -- as of the date of separation rather than the time of trial.  As a result of the order, approximately $170,000 was effectively awarded to the wife.  Because the husband was entitled to thirty percent of the value of this account, the effect of the amended judgment was to deprive him of approximately $51,000.

Although "the marital estate is typically determined as of the date of the divorce trial," Moriarty v. Stone, 41 Mass. App. Ct. 151, 154 (1996), the trial judge has the discretion to choose another date when warranted by the circumstances and the relevant factors set forth in G. L. c. 208, § 34.  See Savides v. Savides, 400 Mass. 250, 252-253 (1987); Caffyn v. Caffyn, 70 Mass. App. Ct. 37, 43 (2007).  "The trial judge has a certain flexibility in determining the exact date at which assets must

be considered and valued."  Child v. Child, 58 Mass. App. Ct. 76, 79 (2003).

Here, although the judge did not provide a revised rationale for the amended judgment, her action clearly implied that she accepted the wife's reasoning, which was consistent with the judge's prior findings and rationale that "[a]ll contributions to this account were made by Wife," that the wife "played a far more significant role" in the preservation of the estate after the separation, and that the case would have been resolved sooner if the husband had been available.  See G. L. c. 208, § 34, as appearing in St. 1989, c. 287, § 59 ("The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit").  The judge did not abuse her discretion in valuing the account as of the time of separation.  See Savides, supra at 253 ("In considering the increase in value of property after separation, it was not error for the judge to exclude the wife's participation in that increase where she made no contribution to the marriage after that time and the increase in value was solely attributable to the husband's efforts").

Finally, the husband generally challenges the judge's asset distribution, which the parties agree resulted in an allocation

of approximately two-thirds of the marital estate to the wife and one-third to the husband. We review the judge's findings to determine whether she considered all the relevant factors under § 34 and did not rely on any irrelevant factors. See Redding v. Redding, 398 Mass. 102, 107 (1986); Zaleski, 469 Mass. at 245. "We then determine whether the reasons for [her] conclusions are 'apparent and flow rationally' from [her] findings and rulings." Baccanti v. Morton, 434 Mass. 787, 790 (2001) (citation omitted). "We will not reverse a judgment with respect to property division unless it is 'plainly wrong and excessive.'" Zaleski, supra (citation omitted). As noted, the judge found that the parties contributed equally to creation of the marital estate prior to separation, but that the wife "played a far more significant role in the preservation of the estate" after the separation. The judge's subsidiary findings, which the husband does not challenge, support her rationale. Reversal of the property division is not warranted.[21]

Conclusion. We vacate so much of the amended judgment as incorporates the temporary orders requiring the husband to pay $1,000 in weekly child support from March 21, 2007, to April 17, 2008, and his entire BAH to the wife starting in October, 2010.

---

[21] We note that the percentage of the marital estate that the husband receives is likely to increase if adjusted after remand to account for his overpayment of child support and the BAH.

We remand the matter to provide the judge an opportunity either to make findings to explain her deviations from the guidelines or to further amend the amended judgment to comply with the guidelines.  See Murphy v. Murphy, 82 Mass. App. Ct. 186, 195 (2012).  In all other respects, the amended judgment is affirmed.

So ordered.