NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1355

AMY PAWLE

vs.

SEAN DONOVAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Appellant, Sean Donovan (father),[1] and Appellee, Amy Pawle (mother), were briefly married before divorcing in December 2019.[2]  The parties have one child together, who was born about a month after the parties were married.  The divorce judgment, which incorporated the parties' separation agreement dated December 17, 2019, provided for joint legal custody but awarded primary physical custody to the mother.  The judgment also provided the father parenting time every Monday morning through

---

[1] The father is a pro se litigant.

[2] The parties were married on July 8, 2018, and last lived together on February 15, 2019.

Tuesday afternoon, and every Thursday morning through Friday afternoon.  No child support was ordered.

In January 2022, the mother filed complaints for modification and contempt.[3]  In response, the father filed a counterclaim for modification the following month.[4]  Following a nonconsecutive three-day trial, from October 2022 to February 2023, the judge issued modification and contempt judgments that granted the mother sole legal and physical custody, ordered the father pay retroactive and prospective child support, modified the father's parenting time, and found the father in contempt of the separation agreement.  The father now appeals from both the modification and contempt judgments.  We affirm the contempt

---

[3] In her complaint for modification, the mother sought the following:  (1) sole legal custody; (2) a modification of the father's parenting time in accordance with the child's best interests; (3) an order requiring the father to pay child support in an amount deemed appropriate under the child support guidelines; and (4) any other orders deemed appropriate.

[4] In his counterclaim, the father sought the following:  (1) sole legal custody; (2) a modification of his parenting time to include Sunday evenings; (3) an inclusion of a provision within the agreement providing for parenting time past age five; (4) an order requiring the mother to pay child support in the amount of $200 per week, or whatever the court should decide; (5) an order stipulating that no parenting time shall be passed off to a third person without the written permission of the other parent; (6) an order that all decisions that pertain to "optional actions or activities," including preschool and optional medical or dental visits, shall only be "imposed upon" the child if both parents agree; (7) an order that the mother pay for the father's legal expenses should he require counsel; and (8) the removal of "unreasonable requirements" such as the parties' agreement to follow the American Academy of Pediatrics' recommendations.

judgment.  With respect to the modification judgment, we vacate so much of the judgment as pertains to the father's parenting time and remand the case for further proceedings consistent with this memorandum and order.  The modification judgment is otherwise affirmed.

Discussion.  1.  Custody and parenting time.  To support modification of child custody or parenting time "the [mother] must first establish that a material and substantial change in circumstance has occurred to warrant a change . . . and that the change is in the child's best interests."  See E.K. v. S.C., 97 Mass. App. Ct. 403, 408 (2020); see also G. L. c. 208, § 28. "[T]he best interests analysis is a child-centered one that focuses on the specific needs and interests of a child and how these might best be met."  Charara v. Yatim, 78 Mass. App. Ct. 325, 336 (2010).  "In custody matters, the touchstone inquiry [is] . . . what is best for the child, and [t]he determination of which parent will promote a child's best interests rests within the discretion of the judge . . . [whose] findings . . . must stand unless they are plainly wrong" (quotations omitted). Malachi M. v. Quintina Q., 483 Mass. 725, 740 (2019), quoting Hunter v. Rose, 463 Mass. 488, 494 (2012).  "[I]t is generally inappropriate to grant shared legal custody to parents who display a high level of acrimony that impedes their ability to jointly make decisions about the children's welfare."  Imbrie v.

Imbrie, 102 Mass. App. Ct. 557, 571 (2023).  The best interests of a child "are likely better served by ending the joint custodial arrangement," rather than "forcing the parties into a cooperative relationship they appear incapable of maintaining." O'Connell v. Greenwood, 59 Mass. App. Ct. 147, 156 (2003).

We review the judge's decision for abuse of discretion or clear error of law.  Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015).  In doing so, we defer to the judge's factual findings, "absent a showing that they are plainly wrong or clearly erroneous."  Id.

Here, sufficient evidence was adduced at trial to support the judge's conclusion that a change in circumstances warranted granting sole legal custody to the mother, and that doing so was in the child's best interests.  See E.K., 97 Mass. App. Ct. at 408.  The judge heard extensive testimony from the mother detailing the challenges the parties have had making parenting decisions due to the father's hostile communication style and unilateral decision making.  For example, the mother testified that the father does not "accept any criticism [in regards to parenting decisions] without then using abusive, belittling language towards [her]."  To support this claim, the mother introduced text messages from the father reflecting his antagonistic communication style.  The mother further testified that the father took issue with the child receiving routine

4

dental care such as X-rays to check for suspected cavities.[5]

When the child was referred to a pediatric dentist, the father notified the dentist's office that the parties were involved in a custody dispute, resulting in the dentist cancelling the child's appointment and the mother having to find a different dentist for the child.  Additionally, the father unenrolled the child from preschool even though the separation agreement did not give the father the authority to do so.

The judge also considered the written psychological evaluation of the father conducted by a clinical psychologist[6] as well as the psychologist's corresponding testimony.  The psychologist concluded that the father suffers from paranoid ideation, delusional thinking, and demonstrated "significant scores" of self-importance and dominance which are traits

_____

[5] The father argues he suffered a due process violation because the judge did not allow a "rebuttal witness" to testify regarding a statement made by the mother's attorney that he "grabbed the x-ray machine" away from a dental technician during the child's dental examination.  However, the father admits that the judge did not permit the witness to testify because she was "not on the list" and we discern no abuse of discretion in the judge's decision.  Commonwealth v. Hinds, 494 Mass. 681, 694 (2024) (holding judge's decision to exclude witness reviewed for abuse of discretion).

[6] After the mother filed a motion to compel a psychiatric evaluation of the father the judge ordered a psychiatric evaluation of both parents.  The results of the mother's evaluation were unremarkable.

associated with narcissistic personality disorder.[7]  The

psychologist testified that these traits would interfere with

the father's ability to work collaboratively with the mother to

make joint decisions about the child's medical care or

education.[8]  The psychologist ultimately concluded that the

father would benefit from mental health intervention, and

failure to treat his mental health challenges would negatively

impact the child's development.

As such, where the father's acrimonious communication style

and mental health challenges prevent the parties from making

joint decisions about their child's welfare, we discern no abuse

of discretion in the judge's decision to grant the mother sole

---

[7] In her decision, the judge erroneously stated that the psychologist used the term "psychopath with sociopathic tendencies" to describe the father.  However, the judge's conclusion that the mother should be granted sole legal custody, partly due to the father's mental health difficulties, was well supported by the psychologist's evaluation and her testimony.

[8] The father asserts that the judge erred by certifying the psychologist as an expert and failed to assess the reliability of the methodology the psychologist used to evaluate the father under the Daubert-Lanigan standard.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993); Commonwealth v. Lanigan, 419 Mass. 15 (1994).  However, where the judge heard testimony that the psychologist is appropriately educated and licensed in clinical psychology, has nearly thirty years of experience providing psychological testing, and employed a testing methodology that is accepted in Massachusetts courts, we discern no abuse of discretion in certifying the psychologist as an expert.  See Commonwealth v. Javier, 481 Mass. 268, 285 (2019).

legal custody of the child.  See Imbrie, 102 Mass. App. Ct. at 571; Schechter, 88 Mass. App. Ct. at 245.

The judge also determined that there was a material change in circumstances sufficient to justify altering the father's parenting time.  For example, the judge found that because the child is now attending school, the child would benefit from a "more traditional" parenting schedule that provides the father with parenting time on alternating weekends as well as afternoon and evening time during the week.[9]  However, this new parenting schedule results in an approximate one-third reduction in the father's parenting hours over a two-week period.[10]  While we agree that the judge was justified in altering the father's parenting schedule in consideration of the child's need to attend school, the judge's findings were insufficient to justify such a significant reduction in the father's total parenting hours.  Indeed, while the judge determined that the father is "overwhelmingly possessive" of the child and fails to understand that the child requires separation from each parent to become

_____

[9] Under the former parenting schedule, the father's parenting time largely overlapped with school hours.

[10] For example, while the separation agreement provides the father with one hundred thirty-two hours of parenting time over a two-week period, the new schedule provides the father with approximately eighty-five hours of parenting time over the same period with moderate variations if the child does not have school or camp on a given weekday.

7

independent and develop,[11] the judge did not explicitly justify the reduction in parenting time on this basis.  See E.K., 97 Mass. App. Ct. at 408.  Therefore, because it is unclear that the child's school attendance necessitates a significant reduction in the father's parenting hours, we vacate the so much of the modification judgment as it relates to the father's parenting time, and remand for further findings and a redetermination of the father's parenting time in light of such further findings.[12]

2.  Child support.  "[M]odification [of child support] is presumptively required whenever there is an inconsistency between the amount of child support that is to be paid under the existing support order and the amount that would be paid under the [Child Support Guidelines (guidelines)]."  Morales v. Morales, 464 Mass. 507, 511 (2013).  See Cavanagh v. Cavanagh, 490 Mass. 398, 423 n.22 (2022).[13]  See also G. L. c. 208, § 28;

---

[11] This finding was supported by the psychologist's evaluation and testimony.

[12] Throughout his brief, the father argues that the judge erred in assessing the credibility of various witnesses, including the mother and the psychologist.  However, a credibility assessment is "quintessentially the domain of the trial judge . . . [and] is close to immune from reversal."  Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995).  We find no reason to upset the judge's assessments here.

[13] Because the parties' combined available income does not exceed $400,000 (the current maximum combined available income amount under the guidelines), see Child Support Guidelines

8

Child Support Guidelines § III (Aug. 2021).  Moreover, "[t]o the extent possible, and consistent with common sense and justice, the modified judgment should take into account the earlier, expressed desires of the parties" as set forth in their separation agreement.  Katzman v. Healy, 77 Mass. App. Ct. 589, 598 (2010), quoting Bercume v. Bercume, 428 Mass. 635, 644 (1999).  See Fehrm-Cappuccino v. Cappuccino, 90 Mass. App. Ct. 525, 526-527 & n.1 (2016) (when modifying child support pursuant to Morales inconsistency standard, judge should also consider, to extent possible, parties' intentions set forth in separation agreement).

Here, in her complaint for modification, the mother sought child support from the father citing "a difference between the amount of the existing child support order and the amount that would result from the application of the Child Support Guidelines," as well as the father's failure "to contribute to the child's expenses as was contemplated by the parties when agreeing to no specific order for child support."  In their separation agreement, the parties stated that "[n]either party shall pay the other child support unless a change in

_____

§ II(C)(2) (Aug. 2021), the "inconsistency" standard for modification applies.  See Morales, 464 Mass. at 510 n.4 (inconsistency standard applies to modification of child support where parties' combined available income does not exceed maximum combined available income under guidelines).

9

circumstances takes place that warrants . . . modification."  At the time that the parties agreed to a zero dollar child support order in the separation agreement, the 2018 guidelines were in effect.  At the time of the modification trial, the new 2021 guidelines were in effect.  In attributing income to the father, the judge found that the father has the capacity to earn substantially more than what he claims to currently earn from his bicycle shop and did not accept the father's rationale that parenting the child prevents him from working full-time.  The judge found that the father was capable of working full-time in a minimum wage position, in part because of the changed parenting schedule necessitated by the child's new school schedule.  The judge used the father's attributed income to calculate child support under the current 2021 guidelines, resulting in a child support order of $100 per week, thus reflecting an inconsistency with the previous zero dollar order set forth in the parties' 2018 agreement.  See Morales, 464 Mass. at 511.  Accordingly, we discern no abuse of discretion in the modification of child support.  See Bobblis v. Costa, 94 Mass. App. Ct. 264, 266 (2018).

3.  Contempt.  The father submits that the contempt judgment should be vacated because he did not disobey an "unambiguous command" when he chose to unenroll the child from preschool.  He further argues that the judge erred by awarding

10

the mother attorney's fees in connection with the contempt judgment.  These arguments are also unavailing.

While it is true that "a civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command," such evidence exists here. Birchall, petitioner, 454 Mass. 837, 853 (2009).  The parties' separation agreement lays out a clear decision-making structure that the parties must follow if "there exists a conflict of opinion . . . relative to a significant issue concerning the minor child's education (including preschool selection) . . . ." Under this structure, the mother must first notify the father in writing of "each non-emergency decision the parties need to make for the child."  The father may then respond in writing with any objections.  If the parties still cannot agree, the separation agreement gives the mother final decision-making authority. Therefore, the father's unilateral decision to unenroll the child from preschool was a clear and "unequivocal" violation of the separation agreement.  See Birchall, supra.

As such, we discern no abuse of discretion in the judge's contempt order, or her decision to grant the mother legal fees and costs associated with securing the contempt judgment.[14]  See

_____

[14] The mother is also seeking attorney's fees in connection with this appeal.  However, this request is denied.  See John T. Callahan & Sons, Inc. v. Worcester Ins. Co., 453 Mass. 447, 449 (2009) (adopting "American Rule" which, in absence of statute or

11

Giannetti v. Thomas, 32 Mass. App. Ct. 960, 961 (1992) (finding award of attorney's fees and costs in civil contempt case properly left to judge's discretion).[15]

Conclusion. The contempt judgment, dated June 9, 2023, is affirmed. So much of the modification judgment, dated June 9, 2023, as pertains to the father's parenting time is vacated, and the case is remanded to the Probate and Family Court for further proceedings consistent with this memorandum and order. The modification judgment is otherwise affirmed. The parenting schedule set forth in the modification judgment shall remain in

---

court rule, does not allow successful litigants to recover attorney's fees and expenses).

[15] The mother moved to strike portions of the record appendix submitted by the father that were not part of the lower court record. The father then moved to strike the mother's appellee brief, as well as the supplemental appendix in its entirety. After careful review, the mother's motion is allowed and the father's motion is denied. See Commonwealth v. Torres, 470 Mass. 1020, 1022 n. 3 (2014) (allowing motion to strike where materials were not part of record before trial court); see also Mass. R. A. P. 18, as appearing in 481 Mass. 1637 (2019).

effect as a temporary order during the pendency of the remand unless the judge orders otherwise.

So ordered.

By the Court (Rubin,
  Desmond & Singh, JJ.[16]),

*Paul Little*

Clerk

Entered:  December 5, 2024.

---

[16] The panelists are listed in order of seniority.